21335

The STATE, Respondent, v. Douglas STEWART, Appellant.
(272 S. E. (2d) 628)

*Chief Atty. John L. Sweeny* and *Staff Atty. Tara D. Shurling,* of *S. C. Appellate Defense Commission,* Columbia, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. Kay G. Crowe,* Columbia; and *Sol. William W. Wilkins* and *Asst. Sol. Matthew Hawley,* Greenville, *for respondent.*

December 1, 1980.

HARWELL, Justice:

Douglas Stewart appeals his conviction for armed robbery and the life imprisonment sentence imposed pursuant to Section 17-25-40, Code of Laws of South Carolina (1976). We affirm the conviction and remand for a sentencing hearing and imposition of the appropriate sentence.

Appellant contends that the pre-trial identification procedures used by the police were unnecessarily suggestive and conducive to irreparable mistaken identification. Appellant therefore argues that the trial court erred by allowing a witness to subsequently identify him in court.

Sometime between 9:30 and 10:00 on the evening of December 23, 1978, at a time when no customers were present, someone leaped over the counter at a Wendy's restaurant in Greenville to accost the employees and rob the store. He was armed and had a nylon stocking in his hand. Witness Clay looked him full in the face, she testified, for 5 to 7 seconds before he pulled the stocking over his head and covered his face. Though Clay was the only employee to see the robber's face, two other employees did state that they could detect "hair on the chin" or a "scraggly beard" of a couple days growth. Witness Clay's description of the man was that he was a black male with a very light complexion; 24 or 25 years of age; 175 pounds; 5 feet 10 inches tall; curly light brown hair. He was wearing jeans. Apparently the initial description did not mention a beard. Sometime during the investigation, however, Clay mentioned the beard.

Some two weeks later on January 8, 1979, the police conducted a photographic display. The officer conducting the display used a photograph of appellant and those of five others drawn from police records. Though the photographs were not preserved, the officer testified that he used only those of light skinned black males with medium-heavy facial hair. The officer stated that none of the employees could give a positive identification but that Clay did comment, referring to the photograph of the appellant, that "if she could see that person in person she could identify him."

The next day, the police held a physical line-up and of those who viewed the line-up, only Clay could give a positive identification. She identified appellant. Only appellant was placed in both the photographic and the physical line-ups; only appellant, among those used in the physical line-up, had a beard though four of the five others did sport facial hair of some kind.

At trial, Clay testified that her trial identification was based solely on her view during the robbery, though on

cross-examination she did admit that appellant's photograph from the display had affected her identification of appellant at the line-up "a little bit".

The United States Supreme Court as well as this Court has dealt with questions of this kind in recent decisions and from these cases the rule of law has developed that suggestiveness alone does not require the exclusion of evidence. *Manson v. Brathwaite*, 432 U. S. 98, 97 S. Ct. 2243, 53 L. Ed. (2d) 140 (1977); *Neil v. Biggers*, 409 U. S. 188, 93 S. Ct. 375, 34 L. Ed. (2d) 401 (1972); *State v. Gambrell*, S. C., 266 S. E. (2d) 78 (1980); *State v. Jones*, 273 S. C. 723, 259 S. E. (2d) 120 (1979); *State v. Denson*, 269 S. C. 407, 237 S. E. (2d) 761 (1977).

The central question is whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive. The factors considered in determining the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation. *Neil v. Biggers, supra; State v. Jones, supra.*

Applying the factors outlined to the circumstances here leads to the conclusion that the identification was reliable. Clay had a full facial view of the appellant; her attentiveness is manifested by the description she gave the police. Only two weeks passed from the robbery to the confrontation.

Appellant would argue that the witness betrayed a lack of certainty at the photographic display and that only because of the suggestiveness of the subsequent line-up was a positive identification secured. We disagree. Referring to appellant's photograph at the display, Clay indicated that she

could identify him if she could see him in person. Rather than merely conduct a showup, the police held a line-up wherein they endeavored to place individuals with physical characteristics as similar to appellant's as then possible.

While there was a degree of suggestiveness in the procedures employed, we do not believe the circumstances of this case show there is "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U. S. 377, 88 S. Ct. 967, 19 L. Ed. (2d) 1247 (1968). As stated by the United States Supreme Court in *Manson v. Brathwaite, supra:*

"Short of that point, such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." 432 U. S. at p. 116, 97 S. Ct. at 2254. We conclude that the trial court did not err by admitting this identification testimony.

Appellant argues that the trial judge should have excluded testimony from the witnesses who positively identified appellant's voice as that of the armed robber. We disagree. The evidence reveals that the witnesses gave certain, unequivocal identification of the voice based upon recollections of the distinctive voice of the robber. One witness in particular stated that he focused his attention on the voice during the incident since the face was masked and not identifiable by him. The witnesses identified appellant by voice when they heard him by chance during a prior court proceeding approximately six months after the robbery. We believe the trial judge properly admitted this testimony. The totality of circumstances demonstrate the reliability of the evidence. *Manson v. Brathwawite, supra; State v. Jones, supra.*

Appellant next contends that he was entitled to prior notice that the habitual offender's statute, § 17-25-40, Code of Laws of South Carolina (1976), would be applied to him and that, regardless of the notice, the statute was improperly applied to him for sentencing on this conviction.

Section 17-25-40 is mandatory. Appellant points to no authority whereby he was entitled to notice prior to its application and we have found none. It is not clear from the record, however, whether the statute was properly applied in this case. The record indicates that appellant was convicted for armed robbery on February 15, 1979; plead guilty to aggravated assault on July 14, 1969; was convicted for assault and battery with intent to kill on June 14, 1969; and on July 14, 1969, was convicted of or plead guilty to six armed robbery charges and one assault and battery with intent to kill charge.

Section 17-25-40 lists certain felonies and provides for required sentences upon a defendant's third and fourth conviction of one of the listed felonies.[1] Of the appellant's prior convictions only armed robbery is specifically dealt with under the statute. From the record we are unable to determine whether appellant's armed robbery convictions on July 14, 1969, are so closely connected that they may be considered as one for purposes of sentencing under the habitual offenders statutes.[2] If the circumstances indicate

---

[1] Section 17-25-40 provides as follows:

"In case anyone whose combined convictions under the law of any state, including this State, or of the United States, of the crime of murder, voluntary manslaughter, rape, armed robbery, highway robbery, assault with intent to ravish, bank robbery, arson, buglary or safecracking, or its intent, amount to as many as three, be convicted under the laws of this State of one of the above crimes, he shall be subjected to the maximum sentence provided for such crime. The maximum sentence shall be life for any person convicted for the fourth time of any such crime. Provided, however, that nothing herein contained shall prohibit a review of a life sentence by the Probation, Parole and Pardon Board as now provided by law."

[2] Section 17-25-50, which must be read with Section 17-25-40, provides:

"In determining the number of offenses for the purpose of imposition of sentence, the court shall treat as one offense any number

that they must be so considered then this conviction would only be the third conviction under Section 17-25-40 which may be counted. As such, Section 17-25-40 would require the maximum sentence for this conviction. If the facts reveal that all the convictions need not be considered as one, then the trial court's sentence of life for the fourth conviction as imposed pursuant to Section 17-25-40 will stand. We must remand the matter to the trial court for a hearing to determine the proper sentence under Section 17-25-40.

Appellant's other exceptions are without merit and are disposed of under our Rule 23.

The conviction is affirmed and we remand for a sentencing hearing and imposition of the appropriate sentence.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.

of offenses which have been committed at times so closely connected in point of time that they may be considered as one offense, notwithstanding under the law they constitute separate and district offenses."