2329

The STATE, Respondent v. William JOHNSON, Appellant.

(458 S.E. (2d) 49)

Court of Appeals

*Asst. Appellate Defenders Lisa T. Gregory* and *Tara Dawn Shurling, SC Office of Appellate defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Asst. Atty. Gen. Norman Mark Rapoport,* Columbia; and *Sol. Wade S. Kolb, Jr.,* Sumter, *for respondent.*

Heard Mar. 9, 1995.

Decided Apr. 3, 1995, Reh. Den. May 12, 1995.

GOOLSBY, Judge:

William Johnson was indicted for assault and battery with intent to kill, possession of a weapon during a violent crime, and two counts of armed robbery. The trial court directed a verdict of acquittal for Johnson on one armed-robbery count and the jury found Johnson guilty on the other armed-robbery count. The jury acquitted Johnson on the remaining charges. Johnson's appeal concerns the questions of whether the trial court erred in denying Johnson's motions to suppress certain testimony and physical evidence. We affirm.

On March 28, 1992, Daniel Dennis went to a local night club

in Williamsburg County. Dennis, who had $300 in his back pocket, testified he played the "tip boards" a few times, had a few beers, and then left; when Dennis attempted to get into the car in the parking lot, someone approached Dennis from behind, Dennis turned around and saw a man pointing a gun in his face; the man demanded money; Dennis ran between two nearby houses; Dennis was shot once in the lower back and fell down; two or three men began beating and kicking Dennis and again demanded money; Dennis wrestled a gun away from one of his assailants and fired it once into the air; the men ripped off Dennis's back pocket, which contained his money, and fled. The police searched Johnson's car a few days later and found three unspent .22-caliber bullets in the trunk. They later arrested Johnson, charging him in connection with the robbery of and the attack on Dennis. Doctors recovered a .22-caliber slug from Dennis's back.

## I.

Johnson first argues the trial court erred in denying his motion to suppress Dennis's in-court identification of him because of the unduly suggestive nature of the lineup from which Dennis identified Johnson as a participant in the robbery.

Approximately one week after Dennis left the hospital, the Williamsburg County Sheriff's Department asked him to view a five-man lineup. Dennis identified Johnson and a co-defendant as his assailants. Johnson and the co-defendant were wearing orange jail shirts and pants. The other men in the lineup were wearing orange jail shirts and street pants. All five men were prisoners. Johnson claims that he did not have time to comb his hair before the lineup and that the other prisoners in the lineup were either older than him, shorter than him, had a different skin tone than him, or had facial hair, which he did not have. Johnson claims that these circumstances surrounding the lineup impermissibly suggested to Dennis that Johnson was involved in the assault.

Even if, however, some degree of suggestiveness existed in the pretrial identification of Johnson, suppression of the identification is not automatically required. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.E. (2d) 140 (1977); *State v. Stewart*, 275 S.C. 447, 272 S.E. (2d) 628 (1980). Under South Carolina law, to determine the reliability of identification testimony:

The central question is whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive. The factors considered in determining the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation.

*Stewart,* 275 S.C. at 450, 272 S.E.(2d)at 629; *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed (2d) 401 (1972). The key issue is whether "under the totality of the circumstances the identification was reliable" even though the confrontation may have been suggestive. *Stewart,* 275 S.C. at 450, 272 S.E. (2d) at 629.

First, the record reflects Dennis had ample opportunity to identify his assailants because he turned around to face them prior to the assault, which took place under a street light. Dennis testified, when confronted with a photograph of the live lineup he viewed, "that picture don't mean nothing to me," and further testified, "I remember their faces in the light from the night light." Second, a person in fear of his life presumably has a more acute degree of attention to his surroundings than a mere passerby. *State v. Ford,* 278 S.C. 384, 296 S.E. (2d) 866 (1982); *State v. Gambrell,* 274 S.C. 587, 266 S.E. (2d) 78 (1980). Finally, although Dennis gave no prior description of his assailants because he was rushed to the hospital, his testimony reflects he immediately and positively identified Johnson in the lineup, which took place only a week after the attack.

We therefore hold Dennis's identification of Johnson sufficiently meets the *Stewart* criteria and the trial court thus did not err in admitting Dennis's in-court identification testimony.

## II.

Johnson next argues the trial court erred in denying his motion to suppress evidence seized from the trunk of his car.

Evidence that the Williamsburg Sheriff's Department deputies gathered from interviews with patrons who were at the crime scene led them to question Johnson and his brother concerning the incident. Johnson and his brother voluntarily

followed the police to the station in Johnson's car. Johnson's brother was driving the car. They were not placed under arrest. The record reflects one officer asked Johnson and his brother, after a brief interview, for permission to search the car once they arrived at the station. The officer testified that, although he did not recall if either brother gave him oral permission to search the car, Johnson's brother, the driver, accompanied him out to the car and stood by the car while the officer searched it. The officer found three unspent .22-caliber bullets in the trunk of the car. At trial, the solicitor offered no evidence tying the three bullets to the slug taken from Dennis's back.

Without deciding the question of whether the underlying search was proper, we hold the admission of the challenged evidence did not prejudice Johnson and was thus harmless beyond a reasonable doubt because there was an abundance of other evidence of Johnson's guilt.[1] *See State v. Darby*, 297 S.C. 459, 377 S.E. (2d) 340 (1989) (without addressing the validity of the search, the court held the introduction at trial of evidence seized from the defendant's car was harmless error beyond a reasonable doubt); *State v. Tillman*, 304 S.C. 512, 405 S.E. (2d) 607 (Ct. App. 1991) (in light of the overwhelming evidence in the record of the defendant's guilt, the admission into evidence of tire impressions the police obtained by cranking and moving the defendant's car was, at most, harmless error); see also *State v. Motley*, 251 S.C. 568, 164 S.E. (2d) 569 (1968) (the burden is on the defendant to show that an error in the admission of the evidence was prejudicial).

Affirmed.

SHAW and HOWARD, JJ., concur.

---

[1]This evidence includes:

(1) the victim's positive identification of Johnson;

(2) testimony from Warren Kennedy, Johnson's friend, that he saw Johnson and his co-defendant behind the bar that night right before Dennis left the bar and "both of them had a gun in their hand";

(3) Kennedy's testimony that he saw the incident and that Johnson was actively involved in it;

(4) Officer Deborah Collins's testimony, which the trial court received without objection, that she "received a call from someone, stating that [she] need[ed] to check the Johnson boys, because they was involved in the shooting that took place at the Hole in the Wall"; and

(5) Officer Larry Snead's testimony that he interviewed witnesses at the scene of the incident who described Johnson's car and identified Johnson and his brother as "the guys that were driving this vehicle."