2343

The STATE, Respondent v. Charles Waymon PATRICK, Appellants.
(457 S.E. (2d) 632)

Court of Appeals

*C. Rauch Wise,* of Greenwood; & *S.C. Office* of *Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr., Staff Atty. Charles F. Reid,* Columbia, and *Sol. W. Townes Jones, IV,* Greenwood, *for respondent.*

Heard Apr. 3, 1995.

Decided May 1, 1995.

CONNOR, Justice:

Charles Waymon Patrick appeals his conviction for burglary, armed robbery, assault with intent to kill, and use of an automobile without permission. We affirm.

## I. *ISSUE*

Patrick was originally convicted in 1976 for burglary and received a life sentence. He appealed and the Supreme Court affirmed. *State v. Allen,* 269 S.C. 233, 237 S.E. (2d) 64 (1977). In 1992, Patrick petitioned for postconviction relief and the circuit court found he received ineffective assistance of counsel and reversed his conviction. The State sought a writ of certiorari, which the Supreme Court denied. In 1993, the State reindicted Patrick for the charges on which he was convicted in this case.

## II. *FACTS*

Early in the morning on October 11, 1973, three men went to the residence of Walter and Loraine Huckabee in Abbeville County. They created a noise to get the Huckabees to come out of the house. Upon hearing the noise, Mr. Huckabee went to the front yard to investigate. There he saw three men wearing gloves, wigs, bandannas, and ski masks and carrying shotguns and pistols. When Mr. Huckabee yelled to his wife to hide, one of the men shot him in the side.

After cutting the telephone line and removing a portion of it, the men broke the glass in the back door to unlock it. They

found Mrs. Huckabee locked in a bathroom and threatened to kill her if she did not come out.

Patrick then led Mrs. Huckabee around the house at gunpoint for approximately two hours demanding she find a safe which she denied she had. Although he had a bandanna over his face and a wig, she could see him well because the home had large windows which let in light from an outside floodlight. Moreover, at one point Mrs. Huckabee accidentally flipped on her bedroom lights. When Patrick took her outside to see her wounded husband, she also got a good look at him.

While searching the house, the men kept the lights off and used flashlights. They communicated with each other with walkie-talkies. They stole money, a gas mask, jewelry, watches, binoculars, and a .32-caliber pistol.

Less than two weeks after the Huckabee robbery, a similar offense occurred in Pike County, Georgia. The three male assailants in that robbery wore gloves, ski masks, bandannas, and wigs. They, too, lured the victim outside by making noise. Moreover, after cutting the telephone line and removing a portion of it, they used walkie-talkies and flashlights during the robbery. They also carried pistols and shotguns.

Mrs. Huckabee travelled on her own volition to Georgia to observe the trial of that case. At the trial Mrs. Huckabee recognized the defendants as the same ones who had robbed her and her husband. She also recognized Patrick as the one who had led her around the house during the robbery.

### III. ANALYSIS

#### A. Evidence of Other Crime

Patrick first argues the trial judge improperly allowed the State to introduce evidence of the subsequent crime in Georgia.

Generally, evidence a defendant committed other crimes is not admissible to prove the crime for which the defendant is charged. *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). However, evidence of another crime is admissible if that evidence tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to es-

tablish the other; or (5) the identity of the person charged with the commission of the crime on trial. *Id.*

The trial judge ruled the evidence admissible to prove identity and common scheme or plan. In determining whether the common plan exception to a particular set of facts, the trial court must first determine if evidence of a prior or subsequent bad act bears a sufficiently close similarity or connection to the crime. *State v. Parker,* 315 S.C. 230, 433 S.E. (2d) 831 (1993); *State v. Hallman,* 298 S.C. 172, 379 S.E. (2d) 115 (1989); *State v. McClellan,* 283 S.C. 389, 323 S.E. (2d) 772 (1984). Furthermore, the court must determine that the probative value of the prior acts evidence outweighs its prejudicial effect. *Id.*

In both the Georgia case and the Huckabee case, the suspects used the same disguises (gloves, wigs, bandannas) and the same tools (walkie-talkies, flashlights). They cut telephone lines in the same manner. They generally carried the same type of weapons. There are sufficient similarities between the Georgia case and the present case to apply the *Lyle* common scheme or plan exception. Moreover, here the probative value of that evidence outweighed its prejudicial effect.

Patrick also complains the prosecution failed to give adequate notice of its intent to use evidence of other crimes in this case. However, Patrick cites no authority which requires the prosecution to disclose this evidence prior to trial. Because we are unaware of any such requirement, we find this argument to be without merit.

## B. In-Court Identification

Patrick contends the voices and eyewitness identification by Mr. and Mrs. Huckabee were tainted by a prior unduly suggestive eyewitness and voice identification.

The trial judge maintains the discretion to oversee the conduct of the trial, including the admission and rejection of testimony. The exercise of the judge's discretion will not be disturbed on appeal absent an abuse of such, or the commission of prejudicial legal error. *State v. Johnson,* 311 S.C. 132, 427 S.E. (2d) 718 (Ct. App. 1993). In deciding whether evi-

dence is admissible, the judge must determine whether the identification procedure was so impermissibly suggestive that it would " 'give rise to a very substantial likelihood of irreparable misidentification.' " *State v. Gambrell,* 274 S.C. 587, 590, 266 S.E. (2d) 78, 80 (1980) (citation omitted).

In evaluating the likelihood of misidentification, the judge should consider: (1) the opportunity of the witness to see the accused during the crime; (2) the degree of attention the witness paid to the perpetrator; (3) the accuracy of the witness' prior description of the perpetrator; (4) the level of certainty demonstrated by the witness in the identification; and (5) the length of time between the crime and the identification. *State v. Stewart,* 275 S.C. 447, 272 S.E. (2d) 628 (1980).

Here Mrs. Huckabee testified she was with Patrick for about two hours, giving her ample time to observe him. During this time she conversed with him continually and observed him under well-lighted conditions. She testified during the *in camera* hearing she looked carefully at him because she

> wasn't sure that I'd get out of this alive. I—I—at time, I thought my husband was dead, they had killed him. And I didn't know if I would get out of it alive, or not. But, I felt like if I did, I would need to be able to tell somebody something about the person that was doing this to me . . . Every chance I got to observe, I try to indent it in my mind.

When she went to Georgia to see the trial there she immediately knew Patrick "was the one," and when she heard him talk that confirmed it for her.

The trial judge admitted Mr. Huckabee's testimony from the 1976 trial because he had disabilities which precluded him from attending this trial. He allowed only the visual identification of Patrick to be read into the record. Mr. Huckabee identified Patrick as the person who shot him. His testimony included a physical description of Patrick as well as a description of the clothing and disguise he wore.

Even though there may be a degree of suggestiveness in the procedures and events that took place before the in-court identifications, a trial judge must consider the totality of the circumstances. Suggestiveness alone does not require the exclusion of evidence. *State v. Stewart,* 275 S.C. 447, 272 S.E. (2d) 628 (1980). Here, the trial judge did not abuse his discretion in admitting the in-court identifications.

## C. Indictment

Patrick next argues the trial judge should have quashed the indictments for armed robbery, assault and battery with intent to kill, and grand larceny because the prosecution dismissed these charges before the original trial in 1976.

Prior to the original trial, the solicitor entered a *nolle prosequi* on the charges of armed robbery, assault and battery with intent to kill, and grand larceny. A *nolle prosequi* is the formal entry on the record by the prosecutor by which he declares he will not prosecute the case further. *State v. Gaskins*, 263, S.C. 343, 210 S.E. (2d) 590 (1974). However, if the *nolle prosequi* is entered prior to the jury being empaneled and sworn, there is no bar to future prosecution for the same offense because the innocence or the guilt of the defendant would not have been adjudicated. *Id.* Here the prosecutor entered the *nolle prosequi* before the impaneling or swearing of the jury. Therefore, the denial of the motion to quash the indictment was not error.

## D. Detainer's Art

Last, Patrick alleges the State violated the Interstate Agreement on Detainers Act by returning him to Georgia in 1975 without first being tried in South Carolina.

Patrick raised this issue in his original appeal. *State v. Allen*, 269 S.C. 233, 237 S.E. (2d) 64 (1977). At that time, our Supreme Court found Patrick was not prejudiced by his return to Georgia. We are bound by that ruling, pursuant to S.C. Const. art. V, § 9 (the decisions of the Supreme Court shall bind the Court of Appeals); *cf. Balloon Plantation, Inc. v. Head Balloons, Inc.*, 303 S.C. 152, 399 S.E. (2d) 439 (Ct. App. 1990) (the Court of Appeals will not dismiss on the same ground upon which the Supreme Court denied a motion to dismiss).

For the reasons stated, the judgment is

Affirmed.

SHAW and CURETON, JJ., concur.