473 S.E.2d 479 (1996)
The STATE, Respondent,
v.
Jody WASHINGTON, Appellant.
No. 2543.
Court of Appeals of South Carolina.
Submitted June 4, 1996.
Decided July 15, 1996.
Assistant Appellate Defender M. Anne Pearce, of the South Carolina Office of Appellate Defense, Columbia, for appellant.
Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General G. Robert DeLoach, III, Columbia; and Solicitor Randolph Murdaugh, III, Hampton, for respondent.
HEARN, Judge:
Jody Washington appeals from his conviction for attempted armed robbery, asserting the victim's identification testimony should have been suppressed because it was tainted *480 by an impermissible suggestive photo identification procedure. We affirm.[1]

FACTS
On October 18, 1994, at approximately 10:30 p.m., Ray Broman stopped at an automatic teller machine (ATM) on the Palmetto Parkway in Hilton Head. Broman parked his car directly in front of the ATM. Broman exited his car, which remained running with the headlights on, and withdrew money. As Broman walked back to his car, he saw two black males walking toward him coming from a gas station across the street. As the men passed by, one of the men exchanged greetings with Broman. Before Broman reached his car, this man struck him in the back of the head with a branch.
As Broman started toward his car, his attacker demanded that he "give up the money, mother f____r." When Broman refused, the other man struck him in the left knee with a branch. As Broman began yelling for help, the two individuals threw their branches at him and ran off into the nearby woods. Broman estimated the incident lasted approximately two to three minutes. Broman testified he was no more than two to eight feet away from the attacker during that time.
Following the attack, Broman met with Detective Matt Adair and described his attacker as a 20 to 25 year old black male, approximately 6' 2", weighing approximately 170 pounds, with medium length hair, and wearing a multicolored shirt and black pants. Adair testified the description brought to mind Appellant, whom he described as being 24 years old, 6' 1", and 173 pounds. The next day, Adair received a photographic lineup from another detective which included Appellant's picture.
On the following day, Adair showed Broman the photographic lineup. After looking at the lineup, Broman selected picture number 2, Appellant's picture. Broman stated to Adair he was "99 percent sure" number 2 was the robber. After viewing the photographic lineup, Broman signed the following statement: "On 10/19 at 5:30 p.m. I was shown a series of six photos of black males. I chose number two as the person who best resembled the person who tried to rob me on 10/18/94." Broman identified Appellant at trial over objection.
Evella Roberts testified she was working at a gas station approximately two blocks from the bank on the night of October 18, 1994. Roberts further testified Appellant entered the store around 10:30 p.m., made a purchase, and left. Roberts stated when Appellant entered the store there was another male outside talking to a store employee. Roberts testified she assumed the other individual left with Appellant because when she looked up the individual was no longer outside the store. Roberts stated she did not know Appellant personally, but knew his nickname was "J.T." Roberts testified she had seen Appellant three or four times at Taco Bell where he used to work.
Two days later, Adair showed Roberts the photographic lineup containing Appellant's picture. Roberts identified Appellant as the last customer in her store the night of the attempted robbery. Roberts identified Appellant at trial over objection.
Bob Bromage, a criminal investigator for the Beaufort County Sheriffs Department, testified he drove through the Huddle House parking lot on the Palmetto Parkway at approximately 10:20 p.m. on October 18, 1994. Bromage stated he saw Appellant at the telephone inside the restaurant. Bromage testified Appellant was wearing dark pants and a multicolored tie-dye shirt. Bromage testified the Huddle House is approximately one-eighth of a mile from the crime scene.
Prior to admitting the identification evidence, the trial judge heard the testimony and reviewed the photographic lineup in camera. The trial judge determined the photographs were not unnecessarily suggestive considering the lineup as a whole, the features of the individuals, and the certainty of the identification.

*481 DISCUSSION
Appellant asserts the identification procedure was unreasonably suggestive in that he was singled out from the other members of the photographic lineup. Specifically, Appellant argues his picture is the only one with a dark background and his hairstyle is the only one that cannot be described as close cropped.
Appellant also argues the circumstances surrounding Broman's identification enhanced the likelihood of a due process violation. Appellant argues (1) the assailants were strangers, (2) the encounter took place quickly in uneven outdoor artificial lighting, and (3) Broman's attention was diverted when he was under attack. Appellant further argues Broman did not remember any distinguishing facial features, but did remember the first assailant had a medium length Afro-style haircut. Appellant contends because his picture was the only one depicting such a haircut, Broman looked at the lineup and incorporated his face into his recollection of the crime. Appellant also states Broman failed to give a positive identification on viewing the lineup, noting Broman signed the statement indicating his picture "best resembled the person who tried to rob" him.
The admission of evidence is within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a clear abuse of that discretion. Washington v. Whitaker, 317 S.C. 108, 451 S.E.2d 894 (1994). Moreover, suggestiveness alone does not require the exclusion of evidence. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); State v. Stewart, 275 S.C. 447, 272 S.E.2d 628 (1980). Instead, the central question for determining the admissibility of pretrial identification is whether, under the totality of the circumstances, the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); Stewart, 275 S.C. at 450, 272 S.E.2d at 629. The factors to be considered in determining the likelihood of misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Thompson, 276 S.C. 616, 281 S.E.2d 216 (1981).
The corrupting effect of a suggestive identification is to be weighed against the factors enunciated in Biggers. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Moreover, "reliability is the linchpin in determining the admissibility of identification testimony." Id.; State v. Denson, 269 S.C. 407, 411, 237 S.E.2d 761, 763 (1977). The key issue is whether "under the totality of the circumstances the identification was reliable" even though the confrontation may have been suggestive. State v. Johnson, ___ S.C. ___, ___, 458 S.E.2d 49, 50 (Ct.App.1995) (quoting State v. Stewart, 275 S.C. 447, 272 S.E.2d 628 (1980).
First, Broman observed the attacker in an area lit by the ATM machine lights and his car's headlights. Broman also observed the attacker at a distance of two to eight feet for approximately two to three minutes. Second, a person in fear of his life presumably has a more acute degree of attention to his surroundings than a mere passerby. State v. Johnson, ___ S.C. ___, 458 S.E.2d 49 (Ct.App.1995). Third, Broman's description of Washington was accurate.
The fourth factor, Broman's level of certainty when he identified Washington, causes this court some concern. When Broman picked Washington's photograph out of a photographic lineup, he stated he was "ninety nine percent sure" Washington was the person who attempted to rob him. Broman's signed statement said Washington was the person who "best resembles" the person who tried to rob him. Therefore, Broman's identification of Washington lacked certainty. However, certainty is not always required. There are two cases we find persuasive on this point. The Fourth Circuit held an identification is not unreliable because it is phrased in uncertain terms. U.S. v. Peoples, 748 F.2d 934 (4th Cir.1984) (per curiam) cert. *482 denied, 471 U.S. 1067, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). In Peoples, the Fourth Circuit affirmed a South Carolina district court case where the lower court admitted into evidence an in-court identification by a witness who stated Peoples, the only black male in the courtroom, resembled one of the bank robbers. Id.
The Fourth Circuit also affirmed a Virginia district court case where two witnesses gave less than certain identifications. Patler v. Slayton, 503 F.2d 472 (4th Cir.1974). The first witness was unable to make a positive identification from two photographic lineups. At trial she testified the person she saw fleeing the crime scene "looked something like" Patler. The second witness saw Patler handcuffed and escorted by policemen while she was at the police station. The trial judge described this as a show-up of "the worst possible kind" and refused to allow the witness to testify as to any identification subsequent to that made at the police station. However, the second witness was allowed to testify that "there wasn't any conflict in [Patler's] appearance" with the man she saw running from the crime scene. In reviewing the trial court's decision to allow the testimony of these two witnesses, the Fourth Circuit decided the lower court was correct because the less than certain identifications of both witnesses were presented to the jury.
Here, Broman testified at trial there was no question in his mind Washington was the man who attempted to rob him. However, on cross examination Broman admitted that his statement stated Washington "best resembles" the person who tried to rob him. Because the jury had the opportunity to observe the witness and attach the credibility it deemed proper to his testimony, including the certainty or uncertainty of his identification, the identification is not unreliable.
Finally, only a short period of time elapsed between the crime and the victim's identification. Moreover, Roberts' identification was reliable in that she had seen Washington before, knew his nickname, and had the opportunity to observe him as the last customer in her store the night of the attempted robbery.
Based upon our review of the photographic lineup, we find the dark background and Washington's hairstyle do not warrant exclusion under the totality of the circumstances. Although Broman stated the robber had medium length hair, his description clearly focused on the estimated height, weight, and age of the robber; therefore, Washington's hairstyle or its length was not a determinative factor which influenced the identification. In terms of the dark background in Washington's picture, there is no indication it influenced Broman's or Roberts' selection. Therefore, the trial judge properly admitted the pretrial identification and the in-court identification to the jury.
Accordingly, Washington's conviction is
AFFIRMED.
HOWELL, C.J., and CONNOR, J., concur.
NOTES
[1] Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument.