560 S.E.2d 441

**The STATE, Respondent,**

v.

**Corey L. REDDICK, Appellant.**

**No. 3448.**

Court of Appeals of South Carolina.

Heard Jan. 10, 2001.

Decided Feb. 19, 2002.

Rehearing Denied March 21, 2002.

632

Chief Attorney Daniel T. Stacey, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Assistant Attorney General Christie Newman Barrett; and Solicitor Warren B. Giese, all of Columbia, for respondent.

ANDERSON, Judge:

Corey Reddick, an inmate, was convicted of throwing bodily fluids on a correctional officer. He was sentenced to ten years imprisonment, consecutive to the sentence he was already serving. He raises two issues on appeal. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Reddick was convicted of five counts of kidnapping and five counts of armed robbery and sentenced to fifty years imprisonment. He was housed at the Broad River Correctional Institute at the time of the incident underlying this action.

In the cell block where Reddick was housed, prisoners ate meals in their respective cells. At the end of meal time, an officer would go from cell to cell collecting meal trays from the prisoners. The prisoners passed their tray to the officer through the food service flap located in the center of the cell door.

On April 1, 1999, Officer Keith Haynes approached Reddick's cell to collect his dinner tray. When Officer Haynes requested Reddick pass him the food tray, Reddick refused and demanded to see Sergeant John Rivera. Officer Haynes called Sergeant Rivera and continued collecting trays. As Sergeant Rivera approached Reddick's cell, he pulled out his can of mace as a precautionary measure and attempted to ask Reddick what was wrong. Reddick tossed the liquid contents of a Styrofoam cup through the open food service flap at Sergeant Rivera, striking the officer directly in the face. Officer Haynes, who was standing next to Sergeant Rivera, was also hit with the liquid. The yellow liquid smelled of urine and both officers believed the substance to be urine. Sergeant Rivera removed his yellow-stained shirt, placed it in a plastic bag, and provided it to his supervisor.

Reddick was indicted for throwing bodily fluids on Sergeant Rivera. The jury convicted Reddick. This appeal follows.

## *LAW/ANALYSIS*

### I. VALIDITY OF THE INDICTMENT

Reddick argues his indictment was invalid and the Circuit Court did not have subject matter jurisdiction over the matter. We disagree.

Reddick was charged with violating S.C.Code Ann. § 24-13-470. The statute states, in pertinent part:

An inmate who attempts to throw or throws bodily fluids including, but not limited to, urine, blood, feces, vomit, saliva, or semen on an employee of a state or local correctional facility is guilty of a felony and, upon conviction, must be imprisoned not more than fifteen years.

The caption of the indictment returned by the Richland County Grand Jury stated "Throwing Bodily Fluids by Prisoner on Correctional Employee." The body of the indictment provided:

That COREY L. REDDICK did in Richland County on or about April 1, 1999, wilfully and knowingly threw [sic] or attempted to throw urine on Sergeant John Rivera an employee of the South Carolina Department of Corrections, Broad River Correctional Institute.

Reddick argues this was insufficient to confer jurisdiction on the Circuit Court. The defect asserted by Reddick is the failure of the indictment to specify Reddick's status as an "inmate."

 An indictment passes legal muster if it "charges the crime substantially in the language of the ... statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood ...." S.C.Code Ann. § 17–19–20 (1985). The indictment must state the offense with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer. *Browning v. State,* 320 S.C. 366, 465 S.E.2d 358 (1995); *Garrett v. State,* 320 S.C. 353, 465 S.E.2d 349 (1995); *State v. Ervin,* 333 S.C. 351, 510 S.E.2d 220 (Ct.App.1998). "The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet." *State v. Beam,* 336 S.C. 45, 50, 518 S.E.2d 297, 300 (Ct.App.1999) (citation omitted).

In *State v. Crenshaw,* 274 S.C. 475, 266 S.E.2d 61 (1980), appellants Crenshaw and Ligon were police officers tried for bribery, blackmail, and criminal conspiracy for extorting $5,000 from a doctor in exchange for promises to drop criminal charges against his son. The jury found appellants innocent of all charges except bribery. On appeal, the appellants asserted the indictment failed to charge the crime of bribery substantially in the language of the statute. They further contended the indictment did not set forth with sufficient certainty and particularity how appellants could have exercised their judgment as police officers in order that the criminal charges against the son be dropped or dismissed. The Court commenced its review with the following annunciation:

An indictment is adequate if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, the defendant to know

what he is called upon to answer, and acquittal or conviction to be placed in bar to any subsequent conviction.

*Id.* at 477, 266 S.E.2d at 62 (citation omitted).

To determine if the appellants were on notice and apprised of the charges against them, the Court examined the indictment "on its face," *and* considered the events at trial:

As the indictment bears the specific code section on its face and there was lengthy discussion concerning that code section throughout the trial, appellants obviously knew for what crime they were being prosecuted. Further, an indictment charging a statutory crime need not use the precise language of the statute in describing the offense, if the words used are equivalent to those employed by the statute, *Livingston v. Commonwealth,* 184 Va. 830, 36 S.E.2d 561 (1946), as was the case in this instance.

*Id.*

In *State v. Adams,* 277 S.C. 115, 283 S.E.2d 582 (1981), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991), the Supreme Court employed the phrase *"practical eye "* to define its comprehensive analysis of indictments for legal sufficiency:

The indictment sufficiency tests noted above must be viewed with a practical eye . . . .

*Id.* at 125, 283 S.E.2d at 588.

Like *Crenshaw,* the *Adams* Court examined the totality of the circumstances to determine if the appellant was cognizant of the crimes for which he was charged:

[A]ll the surrounding circumstances must be weighed before an accurate determination of whether a defendant was or was not prejudiced can be reached. *State v. Hiott, supra; State v. Shoemaker[*276 S.C. 86, 275 S.E.2d 878 (1981*)] supra; State v. Evans,* 216 S.C. 328, 57 S.E.2d 756 (1950).

In this case the statement signed by Adams itself described his *mens rea.* He was indicted for the crimes accompanying the housebreaking-kidnapping and murder. In addition, he was accorded a preliminary hearing. Under all the circumstances, the contention that the indictment failed to fulfill its purposes is not supported. There is no

indication that the appellant was unfairly prejudiced since he obviously knew the crimes for which he was being tried. *Id.* at 125–26, 283 S.E.2d at 588.

Numerous cases have adopted the *"practical eye"* or common sense standard articulated within *Crenshaw* and *Adams.* *See, e.g., State v. Gunn,* 313 S.C. 124, 437 S.E.2d 75 (1993); *State v. Wade,* 306 S.C. 79, 409 S.E.2d 780 (1991); *State v. Hamilton,* 344 S.C. 344, 543 S.E.2d 586 (Ct.App.2001); *State v. Beam,* 336 S.C. 45, 518 S.E.2d 297 (Ct.App.1999).

In *State v. Hamilton,* 344 S.C. 344, 543 S.E.2d 586 (Ct.App. 2001), an inmate stabbed a correctional officer with a homemade knife and was indicted for the crime of the unlawful possession of "contraband" by a prisoner in violation of § 24–3–950. Section 24–3–950 specifies that "contraband" includes items pre-determined to be contraband by the Director of the Department of Corrections and published by the Director in a public place. The indictment in *Hamilton* did not specify that the defendant's knife had been declared contraband by the Director. The defendant argued the indictment failed to sufficiently state the offense and the trial court lacked subject matter jurisdiction to try the case. This Court found the following:

> Viewing the indictment *"with a practical eye,"* we find it stated the charge with sufficient certainty to enable both the trial court and Hamilton to know what crime it alleged. The indictment specifically identified the contraband involved, incorporated the statute, section 24–3–950, by reference, and named the offense in the title. Under the circumstances of this case, we determine the indictment vested the trial court with subject matter jurisdiction.

*Id.* at 365, 543 S.E.2d at 597 (emphasis added).

In *State v. Williams,* 346 S.C. 424, 552 S.E.2d 54 (Ct.App. 2001), the appellant was a prisoner convicted of possession of contraband. On appeal, he argued the indictment was defective because it failed to allege an essential element of the offense. Specifically, the appellant asserted the indictment failed to allege the essential element that the item in his possession had been declared to be contraband by the director of the Department of Corrections. Relying upon *Hamilton,* the Court concluded the indictment was legally sufficient:

*State v. Hamilton,* 344 S.C. 344, 543 S.E.2d 586 (Ct.App. 2001), is the most recent statement of this court relative to the issues surrounding this indictment. In *Hamilton,* this court held that an indictment charging an inmate with possession of contraband in violation of S.C.Code Ann. § 24–3–950 was sufficient to vest the trial court with subject matter jurisdiction, even though it did not allege the item possessed by the accused had been declared contraband by the director of the Department of Corrections. This court found the indictment was sufficient where it specifically identified the contraband involved, incorporated S.C.Code § 24–3–950 by reference, and named the offense in the title of the indictment. *Id.* at 72, 543 S.E.2d 586. In the case before us, the indictment specifically identifies the contraband as marijuana, cites § 24–3–950 of the South Carolina Code, and includes the name of the offense in the title of the indictment. Accordingly, we find that the language of the indictment is sufficient to confer on the trial court subject matter jurisdiction in this case.

*Id.* at 433, 552 S.E.2d at 59.

In the recent case of *State v. Wilkes,* 346 S.C. 67, 550 S.E.2d 332 (Ct.App.2001) *cert. granted,* the appellant sought reversal of his conviction for assaulting two corrections officers. The statute under which the appellant was convicted —— § 16–3–630 —— states: "A person convicted of assault upon an employee of a state or local correctional facility performing job-related duties must serve a mandatory minimum sentence of not less than six months nor more than five years." The appellant argued the indictments returned by the grand jury were invalid because they did not identify the persons assaulted as "corrections officers" in the charging portion. The Court determined articulation of the term "correctional officer" was necessary and held its omission within the charging portion of the indictment was a fatal defect, notwithstanding the language of the caption, which read "ASSAULT ON CORRECTIONAL FACILITY EMPLOYEE § 16–3–630"; consequently, the conviction was vacated. *Id.* at 69–71, 550 S.E.2d at 333–34 (relying upon, *inter alia, State v. Tabory,* 262 S.C. 136, 202 S.E.2d 852 (1974), *North Carolina v. Bennett,* 271 N.C. 423, 156 S.E.2d 725 (N.C.1967), and 42 C.J.S. *Indictments and Informations* § 113 (1991)).

We find the present case is distinguishable from *Wilkes*. In *Wilkes*, the issue presented was whether the indictments sufficiently identified the status of the assaulted officers as "correctional officers." In light of the fact that arresting officers, who were not "correctional officers," were also involved with the defendant that day, the indictments did not sufficiently inform the defendant of the facts he should be prepared to defend. In the instant case, however, the defect alleged is the failure to specify the status of Reddick as an inmate. In contrast to the possible confusion associated with the several officers in the *Wilkes* case, there was no similar confusion in regard to Reddick's status as an inmate in the case at bar. The charging portion of the indictment sufficiently stated the elements of the crime by alleging Reddick threw urine on an employee of the Department of Corrections; therefore, Reddick was informed of the circumstances he was called upon to defend.

Reviewing the present case with a ***"practical eye,"*** we believe the facts are substantially similar to those in *Hamilton*. The elements of the crime charged in the present case include: (1) the throwing of bodily fluids, including urine; (2) by an inmate; (3) on a correctional officer. The charging portion of the indictment identified Reddick by name and alleged he threw urine, a bodily fluid, on a correctional officer. Furthermore, the caption identified the accused as a "prisoner." Clearly, the indictment provided allegations as to all of the elements of the crime and sufficiently informed the trial judge and the defendant as to what crime was being alleged.

This indictment is a paradigm of a charging paper that survives subject matter jurisdiction scrutiny, but evinces a "lackadaisical scrivener product." The Latin phrase *abundans cautela non nocet*[1] is ***edifying*** and ***instructive***.

## II. REDDICK'S CLOSING ARGUMENT

Reddick asserts he had the right to argue in closing the evidence presented at trial that tended to show bias on the part of the prison guards. Reddick argues the trial court

---

1. Abundant or extreme caution does no harm.

erred by limiting his closing arguments regarding bias. We disagree.

■ During cross-examination of Officer Rivera, Reddick's counsel elicited the following:

Defense Counsel: [Y]ou understand how much time [Reddick] is doing in the Department of Corrections, correct?

Officer Rivera: Yes, sir.

Defense Counsel: He's doing a 50–year sentence?

Officer Rivera: I believe so.

Defense Counsel: And he's not getting any work credits or educational credits or good time?

Officer Rivera: No, sir.

During Reddick's closing arguments, the following exchange occurred:

Defense Counsel: Corey Reddick gives inmates a hard time, gives officers a hard time at the Department of Corrections. He is doing a 50–year sentence. And I'm not telling you that to lessen this or make us think that this doesn't matter. It does matter. It does matter to Mr. Reddick. That's why he's here today.

But they know how much time he's doing in the Department of Corrections. They know that he mouths off, becomes insubordinate. They can't do nothing to him. He doesn't get the good time. They can't take that away. He's not getting educational credits or work credits. They can't take that away.

The Solicitor: Objection, your honor. I mean, I wish he would stay within the facts of the record. I mean, he's testifying to stuff that has not been brought up before this jury.

Defense Counsel: Yes, it has, your honor. I'd asked Officer Rivera that. He said that himself, your honor.

The Court: I ask you again to conform comments to the evidence that's been presented in this particular matter.

Reddick's counsel continued his closing arguments. Counsel noted Officer Rivera approached Reddick's cell with mace before knowing what Reddick was complaining about and

referred to prison guards getting away with ill treatment of inmates because the guards were more likely to be believed.

■■■ The trial judge is vested with broad discretion in dealing with the range and propriety of closing argument. *State v. Bell,* 302 S.C. 18, 393 S.E.2d 364 (1990); *State v. Brown,* 333 S.C. 185, 508 S.E.2d 38 (Ct.App.1998). An appellate court will not disturb the trial court's ruling regarding closing argument where there is no abuse of discretion. *State v. Raffaldt,* 318 S.C. 110, 456 S.E.2d 390 (1995). We must review the argument in the context of the entire record. *Brown,* 333 S.C. at 191, 508 S.E.2d at 41. The appellant has the burden of showing that any alleged error in argument deprived him of a fair trial. *Id.*

We find Reddick was correct in his assertion that he was arguing matters in evidence. Officer Rivera clearly testified regarding Reddick's status as an inmate without the ability to earn, and without the ability to have taken away as punishment, work or educational credits. However, we disagree with Reddick's argument that the trial judge improperly limited his closing arguments regarding bias. In our view, the trial judge's comments were merely a reminder to stay within the record, not an order to refrain from pursuing a particular line of argument. Further, a careful review of counsel's closing argument fails to convince us that Reddick was limited in any way by the trial judge's comments. Reddick's counsel continued to argue the prison guards were biased because they disliked Reddick and could get away with concocting a story of Reddick's misbehavior in order to punish him. Reviewing the entire record, we find Reddick was not limited by the trial judge's comments and he failed to meet his burden of showing he was deprived of a fair trial.

## CONCLUSION

Accordingly, Reddick's conviction is

**AFFIRMED.**

CONNOR, J., concurs.

HOWARD, J., dissents in a separate opinion.

HOWARD, Judge, (dissenting):

I respectfully disagree with the majority as to the sufficiency of the indictment. The body of the indictment does not allege that Reddick is an inmate, nor does the indictment allege his status as an inmate in any similar language. Consequently, I would hold that the court did not have jurisdiction to try Reddick for this offense.

The caption of the indictment cannot be used to expand or contract the allegations, because it is not a part of the findings by the grand jury. *State v. Lark*, 64 S.C. 350, 353, 42 S.E. 175, 176–77 (1902); *State v. Knuckles*, 348 S.C. 593, 597–98, 560 S.E.2d 426, 429–30 (Ct.App. 2002).

Furthermore, in my opinion the cases relied upon by the majority are inapposite. In each of the cases in which our courts have examined the language in the indictment with a practical eye in view of the surrounding circumstances, the question presented was whether or not there was prejudice to the defendant. In *State v. Crenshaw*, the defendant challenged the indictment, alleging that it failed to charge the crime of bribery substantially in the language of the statute. 274 S.C. 475, 477, 266 S.E.2d 61, 62 (1980). The Court found the indictment sufficient, stating that an indictment charging a statutory crime "need not use the precise language of the statute in describing the offense, *if the words used are equivalent to those employed by the statute.*" *Id.* (emphasis added). Therefore, *Crenshaw* does not aid the majority, because identifying the defendant by name in the body of the indictment is not equivalent to identifying his status as an inmate.

In *State v. Hiott*, the indictment charged the defendant with armed robbery by "feloniously tak[ing] ... goods or monies of the said John Nates Druggist, Inc., such goods or monies being described: a toothbrush." 276 S.C. 72, 79, 276 S.E.2d 163, 167 (1981) (alteration in original). Factually, the attempted escape of the pharmacist had thwarted the robbery before completion. At trial, the allegation that a toothbrush was the target of the robbery was stricken from the indictment by the trial court because of a lack of evidence. On appeal, the defendant challenged the indictment, arguing the phrase "goods or monies" was insufficient. The supreme court disagreed, viewing the indictment with a practical eye. *Id.* at 82,

276 S.E.2d at 168 (stating "[i]t is not necessary . . . to describe the property the accused intended to take" (quoting 17 C.J.S. *Robbery* § 68)). Again, unlike this case, the indictment in *Hiott* contained a general allegation of the element in question.

In *State v. Adams,* the defendant was charged in an indictment with breaking and entering a house "with intent to commit a crime therein." 277 S.C. 115, 125, 283 S.E.2d 582, 587 (1981). He was also separately indicted for murder and armed robbery in connection with the same incident. On appeal, he argued the indictment was insufficient because it did not allege the crime he was accused of intending to commit upon breaking and entering. Our supreme court dismissed this argument, viewing the indictment and all of the circumstances with a practical eye and noting that he admitted his intentions in his statement to police, he was indicted for the accompanying crimes of murder and armed robbery, and he was afforded a preliminary hearing. *Id.* at 125–26, 283 S.E.2d at 588. Here again, the indictment alleged the element of intent to commit a crime; it simply did not identify the specific crime.

In *State v. Gunn,* the indictment charged that the defendant, along with other named defendants, did

knowingly, unlawfully and willfully conspire, confederate, agree and have tacit understanding with each other and/or other persons, whose names are both known and unknown to the State Grand Jurors, for the purpose of selling, delivering, or bringing into this State in Cherokee and York counties, or providing financial assistance or otherwise aiding and abetting the sale, delivery or bringing into this State in Cherokee and York counties, or the knowing actual or constructive possession in Cherokee and York counties of more than 28 grams of Dilaudid, a narcotic, a derivative of morphine, which is a controlled substance under provisions of Section 44–53–210, Code of Laws of South Carolina (1976), as amended, such conduct not having been authorized by law.

313 S.C. 124, 129, 437 S.E.2d 75, 78 (1993).

On appeal, the defendant challenged the sufficiency of the indictment because it set forth few facts in support of the

allegations. Once again, the supreme court reviewed the sufficiency of the indictment by looking at the issue with a practical eye in view of the surrounding circumstances. The court noted that in a statewide grand jury proceeding, the testimony before the grand jury is recorded and may be accessed by the defendant. Thus, the court found the indictment sufficient. Id. at 130, 437 S.E.2d at 78.

In each of these cases, the question before the court was whether or not there was prejudice to the defendant as a result of insufficient factual allegations contained within the indictment. *See State v. Hamilton,* 344 S.C. 344, 543 S.E.2d 586 (Ct.App.2001) (ruling the word "contraband" in the indictment was sufficient to allege that the defendant possessed an item pre-determined by the Director of the Department of Corrections to be contraband). This is a different question than that which is presented in this case.

Our supreme court has made it clear that an indictment is not sufficient to confer jurisdiction on the court if it does not allege each of the elements of the offense. *See State v. Owens,* 346 S.C. 637, 649, 552 S.E.2d 745, 751 (2001). To say that the element of Corey Reddick's status as an inmate is sufficiently alleged by identifying him by name is to totally engraft an allegation of the element into the body of the indictment and essentially nullifies this fundamental inquiry. I disagree with the majority's conclusion on this point and would vacate the conviction based upon the fatally flawed indictment.