**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOSEPH ERNEST ATKINS,
<u>Petitioner-Appellant,</u>

v.

MICHAEL MOORE, Commissioner,

South Carolina Department of
Corrections; CHARLES CONDON,
Attorney General, State of South
Carolina,
<u>Respondents-Appellees.</u>

No. 97-17

Appeal from the United States District Court
for the District of South Carolina, at Columbia.

Cameron McGowan Currie, District Judge.

(CA-96-2859-3-22)

Argued: January 26, 1998

Decided: March 5, 1998

Before RUSSELL,* WIDENER, and WILKINS, Circuit Judges.

_____

Affirmed in part and dismissed in part by unpublished opinion. Judge
Wilkins wrote the opinion, in which Judge Widener joined.

_____

*Judge Russell heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

**COUNSEL**

**ARGUED:** John Henry Blume, III, CORNELL LAW SCHOOL, Ithaca, New York, for Appellant. Donald John Zelenka, Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Columbia, South Carolina, for Appellees. **ON BRIEF:** Sheri Lynn Johnson, Stephen P. Garvey, CORNELL LAW SCHOOL, Ithaca, New York; Hilary Sheard, Columbia, South Carolina, for Appellant. Charles M. Condon, Attorney General, John W. McIntosh, Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Joseph Ernest Atkins appeals a decision of the district court denying his petition for a writ of habeas corpus,[1] which challenged his 1986 South Carolina convictions on two counts of murder and the resulting death sentences and his 1970 South Carolina conviction for murder. See 28 U.S.C.A. § 2254 (West 1994).[2] For the reasons set forth below, we affirm in part and dismiss in part.

_____

[1] Atkins named Michael W. Moore, Director of the South Carolina Department of Corrections, and the Attorney General of South Carolina as Respondents in the petition. For ease of reference, we refer to Respondents collectively as "the State" throughout this opinion.

[2] Atkins filed his petition for a writ of habeas corpus on January 15, 1997, subsequent to the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214. And, his state application for post-conviction relief was finally denied after June 18, 1996, the date South Carolina purports to have adopted procedures adequate to satisfy the opt-in provisions of

I.

In 1970, Atkins was convicted of murder in connection with the shooting death of his brother and was sentenced to life imprisonment. Although Atkins filed a notice of intent to appeal the conviction, the appeal was never perfected. Atkins learned of the failure to perfect the appeal in 1978, while he was still incarcerated, but took no action at that time. He was released on parole in 1980.

In 1985, Atkins was living on one side of a duplex owned by his father, Benjamin Atkins, who lived on the other side. Aaron Polite and Fatha Patterson lived in a house behind the duplex with their daughter, Karen Patterson. Early in the morning on October 27, after Aaron and Fatha observed Atkins creeping around outside their house carrying a shotgun and a machete, they discovered that their phone line had been cut. Fatha left to inform Benjamin of Atkins' behavior; Atkins later entered the house and shot Karen in the head, killing her. He also fired several shots at Aaron, who managed to escape. Atkins returned to the duplex, where he shot his father to death and fired several more shots through a wall at Fatha. He then left the scene on his motorcycle and, after a brief chase, was captured by law enforcement officers.

Atkins subsequently was charged, <u>inter alia</u>, with two counts of murder. The State notified Atkins that it intended to seek the death penalty, identifying the 1970 murder conviction as the sole aggravating factor. <u>See</u> S.C. Code Ann. § 16-3-20(C)(a)(2) (Law. Co-op.

_____

§ 107 of the AEDPA, presenting the question of whether those provisions apply here. <u>Cf. Howard v. Moore</u>, 131 F.3d 399, 403 n.1 (4th Cir. 1997) (en banc) (concluding that "§ 107 is inapplicable to this appeal since [petitioner's] state habeas petition was finally denied by the South Carolina Supreme Court before June 18, 1996"). Nevertheless, the district court evaluated the petition pursuant to the law as it existed prior to the enactment of the AEDPA. Because we conclude that habeas relief is inappropriate under the more lenient standards in effect prior to the enactment of the AEDPA, we need not consider application of the law as amended by that act. <u>See O'Dell v. Netherland</u>, 95 F.3d 1214, 1255 n.36 (4th Cir. 1996) (en banc), <u>aff'd</u>, 117 S. Ct. 1969 (1997).

3

1985). In response, Atkins filed an application for post-conviction relief (PCR) from the 1970 conviction, claiming that his trial counsel had been constitutionally ineffective at trial and in failing to perfect an appeal. The state PCR court declined to consider the merits of Atkins' claims, concluding that they were barred by the equitable doctrine of laches. The South Carolina Supreme Court subsequently denied Atkins' petition for a writ of certiorari.

While state PCR proceedings concerning the 1970 conviction were pending, Atkins was tried, convicted, and sentenced to death for the murders of his father and Karen Patterson. The South Carolina Supreme Court affirmed Atkins' convictions, but vacated his death sentences. See State v. Atkins, 360 S.E.2d 302 (S.C. 1987). A resentencing proceeding took place in 1988, after which a jury again sentenced Atkins to death. These sentences were affirmed on direct review. See State v. Atkins, 399 S.E.2d 760 (S.C. 1990), cert. denied, 501 U.S. 1259 (1991). Atkins then filed a PCR application in state court attacking the 1986 murder convictions and 1988 sentences. After a hearing, the state PCR court denied the application; the South Carolina Supreme Court denied Atkins' petition for a writ of certiorari, as did the United States Supreme Court.

In January 1997, Atkins filed this action, raising numerous challenges to his 1970 murder conviction and to his capital convictions and sentences. The district court denied relief without a hearing, ruling that many of Atkins' claims, including all of his claims regarding the 1970 murder conviction, were procedurally defaulted and that the remainder were without merit.

II.

We begin by addressing Atkins' challenges to his 1970 murder conviction. Atkins maintains that this conviction is constitutionally infirm because the trial court committed harmful error in issuing an "implied malice" instruction; trial counsel was constitutionally ineffective for failing to preserve a plea agreement reached with the State, inadequately preparing for trial, and failing to perfect Atkins' appeal; and trial counsel's performance was adversely affected by an actual conflict of interest. We conclude that all of these claims are procedurally defaulted.

4

A.

Atkins' claims that the trial court issued an unconstitutional burden-shifting instruction, that counsel was ineffective for failing to preserve a plea agreement, and that counsel labored under an actual conflict of interest were never presented to a state court, and thus are unexhausted. A federal court may not grant habeas relief to a state prisoner unless the prisoner has first exhausted state remedies. See 28 U.S.C.A. § 2254(b). However, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture." George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996), cert. denied, 117 S. Ct. 854 (1997); see Gray v. Netherland, 116 S. Ct. 2074, 2080 (1996).

South Carolina law provides that an applicant for PCR must raise all available grounds for relief in an original application for PCR, as supplemented or amended, unless a "sufficient reason" exists to excuse the failure to do so. S.C. Code Ann. § 17-27-90 (Law. Co-op. 1985); see Drayton v. Evatt, 430 S.E.2d 517, 519-20 (S.C. 1993) (holding that "errors which can be reviewed on direct appeal may not be asserted for the first time, or reasserted, in post-conviction proceedings"). Atkins does not assert any reason for his failure to present the claims listed above in the PCR application challenging his 1970 conviction; accordingly, these claims are procedurally defaulted.

B.

Atkins did exhaust his claims that his counsel was constitutionally ineffective at trial and in failing to perfect an appeal. The state PCR court refused to consider the merits of these claims, however, instead dismissing Atkins' PCR application on the basis of laches.

Absent cause and prejudice or a miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). Such a rule is adequate if it is regularly or consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578,

5

587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

Atkins contends that the doctrine of laches is not an "adequate" state-law ground because it is not consistently applied by South Carolina courts.[3] We disagree. Two decisions of the South Carolina Supreme Court have addressed the propriety of applying laches to a delayed PCR application. See Brazell v. State , 294 S.E.2d 343, 343 (S.C. 1982) (per curiam) (rejecting application of laches to a five-year-old conviction when the delay did not prejudice the state); McElrath v. State, 277 S.E.2d 890, 890-91 (S.C. 1981) (affirming application of laches to bar collateral relief on conviction more than 20 years old when applicant failed to establish that he had exercised reasonable diligence in pursuing PCR and offered no justification for the delay). Atkins maintains that these decisions are inconsistent with other South Carolina cases concerning applications for PCR filed after a lengthy delay that do not discuss laches. See McDuffie v. State, 277 S.E.2d 595, 595-96 (S.C. 1981) (reversing dismissal of PCR application for lack of standing); State v. Patrick, 457 S.E.2d 632, 634 (S.C. Ct. App. 1995) (recounting procedural history of a collateral challenge to a then-16-year-old conviction without discussing laches). We find nothing in the opinions cited by Atkins that is in any way inconsistent with Brazell and McElrath . Accordingly, we reject Atkins' argument that the doctrine of laches is not an adequate state-law basis for decision.[4]

_____

[3] Atkins also maintains that, assuming that the doctrine of laches may provide an adequate and independent state-law basis for decision in some cases, it should not bar review of his claims because it was incorrectly applied by the state PCR court. However, this court lacks authority to review the application of a procedural rule by a state court. See Barnes v. Thompson, 58 F.3d 971, 974 n.2 (4th Cir. 1995).

[4] Atkins further asserts that dismissal of his claims on the basis of laches was unfair because he had "no reason" to pursue PCR until he learned that the 1970 conviction would be employed as an aggravating factor in support of the death penalty for the murders of his father and Karen Patterson. Brief of the Appellant at 35 n.20. We believe, however, that the fact that Atkins was still incarcerated when he learned of counsel's failure to perfect his appeal gave Atkins ample reason to pursue PCR long before he actually did so.

C.

A habeas petitioner is entitled to review of the merits of defaulted claims only if he can establish cause and prejudice or a fundamental miscarriage of justice to excuse the default. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). Here, Atkins maintains that he is actually innocent of the death penalty because his death sentences for the murders of his father and Karen Patterson cannot stand if the 1970 murder conviction is constitutionally infirm. [5] See Sawyer v. Whitley, 505 U.S. 333, 336 (1992) (holding that a habeas petitioner is entitled to consideration of the merits of defaulted claims if he can establish "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law").

Atkins' claim of actual innocence must fail because absent a complete deprivation of counsel, which Atkins does not allege, the right to collaterally attack a conviction does not allow a defendant to challenge, in the context of a subsequent proceeding, the constitutionality of a prior conviction used to enhance the defendant's sentence for the subsequent crime. Cf. Custis v. United States , 511 U.S. 485, 496-97 (1994) (holding that Constitution does not entitle defendant in federal sentencing proceeding to collaterally attack prior convictions used to enhance his federal sentence in the context of the subsequent proceeding). Acceptance of Atkins' claim of actual innocence of the death penalty would violate the rule articulated in Custis by effectively allowing Atkins to collaterally attack his 1970 conviction in the context of the 1988 resentencing. Put another way, under Custis Atkins' defaults may be excused only upon a showing of actual innocence of the 1970 crime--not of the 1988 death sentence. Because Atkins has not attempted to make such a showing, we reject his assertion that he is entitled to consideration of the merits of his defaulted claims.

_____

[5] Atkins does not attempt to establish cause and prejudice or actual factual innocence to excuse his default; accordingly, we do not consider whether either exists. See Gilbert v. Moore, 1998 WL 19936, at *13 n.10 (4th Cir. Jan. 22, 1998) (en banc).

7

III.

Atkins raises only one challenge to his 1986 convictions for the murders of his father and Karen Patterson--that trial counsel were constitutionally ineffective for failing to pursue a verdict of guilty but mentally ill (GBMI).**6** See S.C. Code Ann. § 17-24-20 (Law. Co-op. 1985). In making this claim, Atkins bears the burden of establishing "that counsel's representation fell below an objective standard of rea-

_____

**6** Atkins presented this claim in his PCR application, and the state PCR court ruled on the merits of the claim. Although the claim was not included in the petition for a writ of certiorari that Atkins' counsel filed with the South Carolina Supreme Court, Atkins included it in a pro se supplemental petition that he filed with the court simultaneously with a motion to substitute counsel. The South Carolina Supreme Court denied the petition for a writ of certiorari filed by counsel and denied Atkins' motion to substitute counsel, but did not rule explicitly on the supplemental petition. The district court concluded that because South Carolina law forbids a PCR applicant who is represented by counsel from filing supplemental pro se pleadings in the South Carolina Supreme Court, see Foster v. State, 379 S.E.2d 907, 907 (S.C. 1989), Atkins had failed to exhaust the claim. The court further reasoned that Atkins would be procedurally barred from presenting the claim in a subsequent PCR application, and thus that the claim was defaulted.

This holding is incorrect. A petitioner exhausts state remedies by fairly presenting his constitutional claim to the state courts. See Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994). And, the fact that the state court does not rule on the merits of a claim does not mean that it is unexhausted. See Smith v. Digmon, 434 U.S. 332, 333 (1978) (per curiam) (holding that exhaustion does not turn on whether the state court considers the merits of a claim that has been fairly presented to it). Because Atkins presented his claim that trial counsel were constitutionally ineffective to the South Carolina Supreme Court, the claim has been exhausted and may be treated as defaulted only if the state court actually relied on a state procedural rule in denying relief. See Harris, 489 U.S. at 262-63.

In determining whether the state court rested its decision on an adequate and independent state-law ground, we look to the last reasoned judgment of a state court addressing the claim. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). The last reasoned state-court decision addressing Atkins' ineffectiveness claim is that of the state PCR court, which addressed the claim on the merits, applying federal constitutional standards. Thus, because the last reasoned decision did not default the claim, this court must also consider the merits. See id.

8

sonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. We review de novo Atkins' assertion that his attorneys were constitutionally deficient. See id. at 698.

Atkins maintains that counsel for the 1986 trial failed to investigate adequately the possibility that Atkins might possess a viable GBMI defense. The record reveals, however, that counsel were aware of the existence of the GBMI defense and consulted with various mental health experts regarding Atkins' mental state. These consultations revealed only that Atkins abused alcohol and that he suffered from symptoms of post-traumatic stress disorder. In short, counsel's investigation revealed nothing on which to base a GBMI claim. Under these circumstances, we cannot say that the performance of Atkins' counsel fell outside the broad range of professionally competent assistance. See Gilbert v. Moore, 1998 WL 19936, at *11 (4th Cir. Jan. 22, 1998) (en banc) (holding that counsel was not ineffective for failing to obtain a psychological expert to develop mitigating evidence when psychiatric evaluations performed prior to trial revealed no basis for further investigation of defendants' mental state); Laws v. Armontrout, 863 F.2d 1377, 1389 (8th Cir. 1988) (en banc) (holding that counsel's failure to pursue psychiatric evidence was not objectively unreasonable when "[n]othing made known to counsel during his representation of [defendant] ... suggested to counsel that presenting evidence of [defendant's] psychiatric state would be of any benefit in his defense" (internal quotation marks omitted)).

IV.

Atkins raises numerous claims regarding the death sentences imposed upon him following the 1988 resentencing proceeding. We address these challenges seriatim.

A.

Atkins first maintains that his constitutional right to trial by an impartial jury was violated when the trial court qualified a prospective

9

juror in spite of her admission that, contrary to the instructions of the court, she had read a newspaper article concerning the case which noted that Atkins previously had been sentenced to death.**7** Atkins points out that although the prospective juror stated that she could base her verdict solely on the evidence presented in court, she also conceded that she would find it difficult to disregard the article completely. The trial court qualified the prospective juror over Atkins' objection.

The fact that a juror is not "totally ignorant of the facts and issues involved" in the case does not mean that a defendant's constitutional rights have been violated. Murphy v. Florida, 421 U.S. 794, 799-800 (1975). Rather, the Constitution is satisfied "`if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" Id. at 800 (quoting Irvin v. Dowd, 366 U.S. 717, 723 (1961)). Here, although the prospective juror's responses to some of the questions propounded by the court and defense counsel arguably may be viewed as equivocal, Atkins has not established by clear and convincing evidence that the trial court erred in finding that she could lay aside her impressions of the case and judge it solely based upon the evidence presented in court. See Maynard v. Dixon, 943 F.2d 407, 415 (4th Cir. 1991) (explaining that when a prospective juror's responses to voir dire are equivocal, a determination by trial court concerning whether that juror is qualified to serve is entitled to presumption of correctness under 28 U.S.C.A. § 2254(d)).

B.

Prior to the 1988 resentencing proceeding, Atkins moved to strike the 1970 conviction as an aggravating factor, asserting that the conviction was unconstitutional. The trial court denied the motion on the basis that the resentencing proceeding was not a proper forum for a collateral attack on the 1970 conviction. Atkins then stipulated that he had been convicted of murder in 1970, but sought to introduce evidence regarding the circumstances of the conviction to establish that

_____

**7** The State does not contend that Atkins failed to exhaust his peremptory challenges. See Ross v. Oklahoma, 487 U.S. 81, 88 (1988) (holding that the loss of a peremptory challenge does not amount to a constitutional violation).

10

trial counsel was ineffective and that Atkins should have been convicted only of voluntary manslaughter or should have been acquitted on the basis that he acted in self-defense. The trial court allowed Atkins to introduce portions of the transcript of the 1970 trial, but refused to allow testimony or evidence concerning the ineffectiveness of trial counsel. Subsequently, the trial court instructed the jury that the stipulation required the jury to conclude that Atkins had been convicted of murder, but that the circumstances surrounding the conviction could be considered as mitigating evidence.

Atkins now maintains that the trial court violated his constitutional rights by refusing to strike the 1970 conviction as an aggravating circumstance based upon its unconstitutionality; by excluding evidence of counsel's ineffectiveness during the 1970 trial; and by instructing the jury that evidence concerning the 1970 conviction could be considered only as mitigating evidence, and not as evidence of whether the State had proved the existence of a prior conviction for murder. We conclude that these challenges amount to an attempt to attack collaterally the 1970 conviction in the context of the 1988 resentencing proceeding. As explained previously with respect to Atkins' assertion that the procedural default of his claims regarding the constitutionality of the 1970 conviction may be excused on the basis that he is actually innocent of the death penalty, the rule of Custis precludes such challenges. Cf. Custis, 511 U.S. at 496-97.

C.

During the resentencing proceeding, Fatha Patterson testified that Atkins flew the Confederate flag on Independence Day, that she complained about the flag to Atkins' father, and that the flag was later removed. The State offered this testimony, along with testimony that Fatha had previously complained about Atkins' dog, to establish a possible motive for Atkins' attack on the Polite/Patterson family. Atkins contends that the introduction of this evidence violated his constitutional rights by introducing an arbitrary factor--racial prejudice--into the sentencing process. We disagree.

The admission of evidence of racial bias in a capital sentencing proceeding is not per se unconstitutional; rather, provided such evidence is relevant to the proceedings, it is properly considered in deter-

11

mining a defendant's sentence. See Dawson v. Delaware, 503 U.S. 159, 164 (1992). Here, evidence that Atkins had clashed with his neighbors concerning his practice of flying the Confederate flag on Independence Day provided a possible reason for Atkins' acts of violence against Karen Patterson and her parents and thus was relevant.

D.

Next, Atkins maintains that his attorneys in the resentencing proceeding were constitutionally ineffective for failing to investigate and present mitigating evidence to the jury. First, although expert testimony was presented that Atkins was dependent on alcohol and that he suffered from symptoms of post-traumatic stress disorder (PSD), Atkins asserts that counsel should have uncovered additional information that would have allowed the experts to diagnose him as suffering from PSD, rather than as merely suffering from its symptoms. Atkins also contends that counsel should have obtained a licensed social worker to present testimony regarding physical, emotional, and sexual abuse inflicted on Atkins as a child.

Regarding Atkins' claim that counsel should have obtained additional information to support a diagnosis of PSD, assuming without deciding that counsel's performance was professionally deficient, we are not convinced that Atkins has established that he was prejudiced. At best, the evidence Atkins contends should have been obtained by counsel would have meant that, instead of testifying that Atkins suffered from symptoms of PSD, the experts would have testified that he suffered from the disorder itself. We find it difficult to believe that the jury would have perceived a dispositive distinction between the testimony Atkins contends he should have had and that he actually obtained. In short, we cannot say that our confidence in the verdict is undermined.

We also reject Atkins' contention that counsel were constitutionally ineffective for failing to present the testimony of a licensed social worker regarding Atkins' traumatic childhood. During the 1988 resentencing, counsel presented evidence that Atkins was regularly beaten by his father and that both of Atkins' parents were alcoholics. Assuming that counsel's failure to obtain more evidence of abuse and to present it through the testimony of a social worker fell outside the

12

broad range of reasonably competent assistance, we are not convinced that Atkins has satisfied the prejudice prong of Strickland because the evidence Atkins claims should have been presented to the jury was largely cumulative of evidence that actually was presented.

E.

Atkins further contends that the instructions given by the trial court regarding consideration of mitigating evidence led the jury to believe that it had to agree unanimously on the existence of any given mitigating factor and thus were constitutionally inadequate. See Mills v. Maryland, 486 U.S. 367, 373-75 (1988) (holding that a capital sentencing scheme that requires the jury to agree unanimously to the existence of the same mitigating factor violates the Constitution). Having examined the challenged instruction in the context of the entire charge, we conclude that "`there is [no] reasonable likelihood that the jury ... applied the challenged instruction in a way that prevent[ed] the consideration of constitutionally relevant evidence.'" Buchanan v. Angelone, 1998 WL 17109, at *5 (U.S. Jan. 21, 1998) (quoting Boyde v. California, 494 U.S. 370, 380 (1990)); see Arnold v. Evatt, 113 F.3d 1352, 1363 (4th Cir. 1997) (holding similar instruction not violative of Mills), cert. denied, 118 S. Ct. 715 (1998); Kornahrens v. Evatt, 66 F.3d 1350, 1364 (4th Cir. 1995) (same). Accordingly, we reject this contention.

F.

The jury retired to deliberate its verdict in the resentencing proceeding at 5:30 p.m. on a Friday evening. At 9:00 p.m., the jury sent a note to the trial court stating that it "seem[ed] to" be deadlocked and asking whether it should continue to deliberate. J.A. 2086 (internal quotation marks omitted). After discussion with counsel, the court informed the jury that it had not deliberated long enough and inquired whether the jury wished to break for the evening or continue. When the jury indicated a desire to cease deliberations for the night, the court acceded to this request.

Atkins now contends that the statement by the trial court that the jury had not deliberated long enough constituted an impermissibly coercive supplemental jury charge. See Lowenfield v. Phelps, 484

13

U.S. 231, 241 (1988); see generally Allen v. United States, 164 U.S. 492, 501-02 (1896). Even a cursory review of the colloquy between the court and the jury, however, establishes that the trial court said nothing that even resembled an Allen charge, proper or otherwise. See United States v. Burgos, 55 F.3d 933, 935-36 (4th Cir. 1995) (describing an Allen charge as one "`advising deadlocked jurors to have deference to each other's views, that they should listen, with a disposition to be convinced, to each other's argument'" (quoting United States v. Seeright, 978 F.2d 842, 845 n.* (4th Cir. 1992))).

G.

During the evening recess in deliberations, one of the jurors consulted the Bible to locate chapter and verse citations for passages that she recalled from her religious training as justifying the imposition of the death penalty. The following morning, biblical passages were discussed in an effort to persuade two jurors, who were holding out against a death sentence on religious grounds, to change their positions. Atkins contends that the juror's consultation of the Bible violated his Sixth Amendment right to a jury verdict untainted by outside influences. See Parker v. Gladden, 385 U.S. 363, 364-65 (1966) (per curiam).

Even if we were to agree with Atkins that the juror conduct complained of rises to the magnitude of a constitutional violation, relief would not be appropriate. Atkins points to no clearly established rule of constitutional law in existence in June 1991, when his conviction became final, that would have compelled a state court to reverse his conviction; hence, this argument is barred by the new-rule doctrine set forth in Teague v. Lane, 489 U.S. 288 (1989). See O'Dell v. Netherland, 117 S. Ct. 1969, 1973 (1997). Accordingly, this argument does not provide a basis for relief.

V.

Following the issuance of its order granting summary judgment to the State on Atkins' application for habeas relief, the district court granted in part and denied in part Atkins' application for a certificate of appealability. See 28 U.S.C.A. § 2253(c)(2) (West Supp. 1997) (providing that a certificate of appealability may be issued "only if the

14

applicant has made a substantial showing of the denial of a constitutional right"). Specifically, the court granted a certificate of appealability as to the issues discussed in Parts II, IV(B), and IV(G) of this opinion. As to those issues, we affirm the order of the district court denying Atkins' petition for a writ of habeas corpus. Atkins moved this court for a certificate of appealability as to the remaining issues. For the reasons set forth in the body of this opinion, we conclude that Atkins has failed to make a substantial showing of the denial of a constitutional right with respect to the issues discussed in Parts III, IV(A), IV(C), IV(D), IV(E), and IV(F) of this opinion. See Murphy v. Netherland, 116 F.3d 97, 101 (4th Cir.) (denying certificate of appealability under § 2253 in habeas corpus action seeking relief from death sentence when petitioner failed to make a substantial showing of the denial of a constitutional right), cert. denied, 118 S. Ct. 26 (1997). Accordingly, we dismiss Atkins' appeal as to those issues.

AFFIRMED IN PART; DISMISSED IN PART

15