541 S.E.2d 833

**The STATE, Respondent,**

v.

**John Gregory BRAXTON, Appellant.**

**No. 25246.**

Supreme Court of South Carolina.

Heard Dec. 5, 2000.

Decided Feb. 5, 2001.

---

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, of Columbia; and Solicitor Barbara R. Morgan, of Aiken, for respondent.

BURNETT, Justice.

Appellant was indicted on charges of murder, kidnapping, armed robbery, and possession of a weapon during the commission of a violent crime. He was convicted of murder and possession of a weapon during the commission of a violent crime, but acquitted on the remaining charges. Appellant was sentenced to life imprisonment for murder and five years, consecutive, for the weapon possession charge. We affirm.

## *FACTS*

Melissa Griffith (the victim) was last seen at Country Folks, the convenience store where she worked. When the victim did not arrive home as expected, police went to Country Folks. Although the store's front door was locked, the alarm had not been activated. A paper bag containing $1700 was missing; however, the cash register drawer containing $150 was sitting on a stool behind the counter. There were no signs of a struggle. Neither the victim nor her car were present.

Later the same evening, the victim's car was located in a cornfield 1½ miles away from Country Folks. The victim was outside the vehicle. She had been shot four times. Tennis shoe tracks led from the car.

A bloodhound followed the tracks to appellant's home. Police searched appellant's home and found a pair of tennis shoes which were consistent in size and design with the tracks near the victim's car, but were not positively identified as having made the tracks. A witness testified appellant stated, "[m]an, you can't arrest me just because my shoes match."

During the search, police found a nine millimeter Ruger pistol, wrapped in a t-shirt, in vines beside appellant's home. Before the police located the pistol, appellant declared, "that's not my gun." An expert witness testified the cartridge casings found at the victim's car were fired from the nine millimeter Ruger found in appellant's yard. Appellant's brother testified the t-shirt wrapped around the Ruger belonged to appellant.

Appellant's friend, Tony Berry, testified the evening before the murder, he, appellant, appellant's brother Stephen, and their brother Ricco were playing cards. Appellant and Stephen began arguing. When appellant "went in the back room in the back part of the house and reached down," Berry ran out of the house. Berry testified he knew appellant had a nine millimeter gun and he thought appellant was going to get it. Berry returned a short while later; he did not see a gun.

The victim's husband, Anthony Griffith, testified about an incident which occurred at Country Folks one month before the victim's murder. Griffith testified he was helping his wife at Country Folks when appellant entered the store. Appellant asked for a package of cigarettes. According to Griffith, when his wife heard appellant's voice, she dropped a handful of change into the cash register. When she refused to sell appellant cigarettes, appellant and the victim argued. Griffith's wife went to the telephone. Thereafter, Griffith and appellant argued. Appellant left. Griffith stated his wife appeared "very upset, angry, and scared" when appellant asked her for cigarettes.

## ISSUE

Did the trial judge err by improperly admitting two instances of bad act evidence?

## DISCUSSION

Appellant argues the trial court erred in allowing Berry to testify about the argument between he and his brother the night before the murder. In addition, he contends the trial judge erred by allowing Griffith to testify he and the victim argued a month before her murder. Appellant charac-

terizes both Berry and Griffith's testimony as bad act evidence. We disagree.

Evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. All relevant evidence is admissible, unless constitutionally, statutorily, or otherwise provided. Rule 402, SCRE. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, SCRE.

South Carolina law precludes evidence of a defendant's prior crimes or other bad acts to prove the defendant's guilt for the crime charged except to establish (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan, or (5) the identity of the perpetrator. Rule 404(b), SCRE; *State v. King*, 334 S.C. 504, 514 S.E.2d 578 (1999); *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). The evidence of the prior bad acts must be clear and convincing to be admissible. *State v. King, supra*. The record must support a logical relevance between the prior bad act and the crime for which the defendant is accused. *Id.* Further, even though the evidence is clear and convincing and falls within a *Lyle* exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Rule 403, SCRE; *State v. King, supra*.

That portion of Berry's testimony stating he knew appellant possessed a nine millimeter pistol was relevant as it tended to identify appellant as the possessor of the murder weapon, a nine millimeter pistol. Rule 401, SCRE (definition of relevant evidence). The identity of the user of the murder weapon was the critical issue at trial. Accordingly, the probative value of this portion of Berry's testimony substantially outweighed any claim of undue prejudice. Rule 403, SCRE.

However, Berry could have testified he knew appellant possessed a nine millimeter pistol without describing the argument between appellant and his brother. Testimony regarding the argument was irrelevant to identification of appellant as the possessor of the murder weapon as Berry

testified he did not see appellant with a gun at the time of the argument.

■ Clearly, the State wanted Berry to testify about the argument between appellant and his brother on the evening before the murder to establish appellant was a violent person and quick to draw his pistol. This testimony regarding appellant's character was inadmissible. Rule 404(a), SCRE (evidence of a person's character or character trait is inadmissible for the purpose of establishing the person acted in conformity with that particular character or trait on a particular occasion).[1]

■ Nonetheless, the testimony regarding appellant's violence and willingness to produce a pistol was cumulative to other evidence offered at trial. For instance, Stephen also testified he and appellant argued and appellant drew a pistol on the evening before the murder. Similarly, appellant's cousin testified appellant took the Ruger from him several months before the murder. When he asked appellant to return the pistol, appellant put the gun to his cousin's face and told him he would shoot him. Accordingly, while we conclude Berry's testimony about the incident was inadmissible character evidence, its admission was harmless error. *State v. Blackburn*, 271 S.C. 324, 247 S.E.2d 334 (1978) (the admission of improper evidence is harmless where it is cumulative to other evidence).[2]

---

1. Rule 404(a)(1), SCRE, however, allows character trait evidence if offered by the accused or offered by the State to rebut the accused's character trait evidence. *See State v. Major*, 301 S.C. 181, 391 S.E.2d 235 (1990) (when the accused offers evidence of his good character regarding specific character traits relative to the crime charged, the State may cross-examine as to particular bad acts or conduct relating to the traits focused on by the accused).

2. Appellant relies on *State v. Douglas*, 302 S.C. 508, 397 S.E.2d 98 (1990), to support his claim there was no connection between his possession of a weapon the night before the murder and the crimes for which he was on trial. In *Douglas*, the defendant admitted ownership of the murder weapon, a pistol, but claimed he had loaned it to someone before the shooting. Three witnesses testified, hours before the shooting, they had been "horseplaying" with appellant when he produced a pistol, cocked it, and threatened to kill them. The State argued this bad act testimony was relevant to the defendant's state of mind at the time of the shooting. This Court disagreed, finding there

■ We further conclude the trial judge did not err in admitting Griffith's testimony. Contrary to appellant's assertion, Griffith's testimony did not refer to any bad act by appellant. It merely revealed appellant and the victim argued, apparently about her refusal to sell him cigarettes. Although the incident suggests there was a prior disagreement between appellant and the victim, there is no indication the prior disagreement was the result of a bad act committed by appellant.

■ In homicide cases, evidence of previous quarrels and ill feelings or hostile acts between parties is admissible to show that animus probably existed between the parties at the time of the homicide. *State v. Williams,* 321 S.C. 327, 468 S.E.2d 626 (1996) (evidence of controversial telephone calls and loud altercations between victim and defendant were admissible to establish strained nature of parties' relationship); *State v. Clinkscales,* 231 S.C. 650, 99 S.E.2d 663 (1957) (evidence defendant shot victim six or seven weeks prior to murder was admissible); *State v. Brooks,* 79 S.C. 144, 60 S.E. 518 (1908) (evidence of previous quarrels and ill feeling between the victim and defendant arising out of child custody controversy was admissible); 22A C.J.S. *Criminal Law* § 721 (1989) (evidence of relations existing between accused and victim prior to crime are admissible). Prior disputes between the victim and defendant may be relevant to establish the accused's motive for committing the crime and motive may have bearing on the identity of the accused as the perpetrator of the crime. *State v. Atkins,* 303 S.C. 214, 399 S.E.2d 760 (1990) (testimony regarding prior disputes between white defendant and family of black victim, one of which involved defendant's flying the Confederate flag on Independence Day, was relevant to motive and admissible); *State v. Plyler,* 275 S.C. 291, 270 S.E.2d 126 (1980) (testimony concerning a verbal altercation between victim and defendant prior to the murder

---

was no logical connection between appellant's state of mind while "horseplaying" with his friends and his state of mind at the time of the shooting the unrelated victim.

*Douglas* is easily distinguishable from the present case. Unlike the testimony in *Douglas,* Berry offered no testimony appellant committed a bad act. He merely testified appellant and his brother argued.

was admissible as evidence of accused's motive and related to defendant's identity as perpetrator).

Griffith's testimony was properly admitted as evidence of a prior dispute and ill feelings between the victim and appellant and was relevant to establish appellant's motive to commit the crime and his identity as the perpetrator. *State v. Williams, supra.* Moreover, the probative value of this testimony substantially outweighed any danger of undue prejudice to appellant.

Accordingly, appellant's convictions and sentences are AFFIRMED.

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.