THIS OPINION HAS NO PRECEDENTIAL
VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH
CAROLINA
In The Court of Appeals

 
 
 
 The
 State,        Respondent,
 
 
 

v.

 
 
 
 Maurice Tyrone
 Porter,        Appellant.
 
 
 

Appeal From Florence County
James E. Brogdon, Jr., Circuit Court Judge

Unpublished Opinion No.
2005-UP-457
Submitted June 1, 2005  Filed July 19, 2005

AFFIRMED

 
 
 
 Acting Chief Attorney Joseph
 L. Savitz, III, of Columbia, for Appellant. 
 Attorney General Henry D. McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W.
 Elliott, and Assistant Attorney General W. Rutledge Martin, all of
 Columbia; and Solicitor Edgar Lewis Clements, III, of Florence, for
 Respondent.
 
 
 

PER CURIAM:  Maurice
Porter appeals his conviction for voluntary manslaughter, arguing the trial
court erred in admitting evidence of two statements Porter made in front of
Arthur Niles, a jailhouse informant, while incarcerated.  Porter contends Niles elicited incriminating statements from him while acting as a
government agent, violating Porters right to counsel.  We affirm.[1]
FACTS
Porter was arrested for the murder
of Shamell Simmons and placed in lockup at the Florence County Detention Center. 
While at the detention center, Porter met Arthur Niles, an inmate detained on
federal charges.  Niles and Porter
were housed in the maximum segregation (max seg) section of the detention
center. 
Porter allegedly made the first
statement to Niles and a third
prisoner.  Niles testified the third prisoner asked Porter:  What you
locked up for?  Porter told him he was charged with murder.  The
third prisoner then asked Porter if he did it, and Porter responded that
he did it but they dont have no evidence. 
Thereafter, Niles
contacted Darrin Yarborough, the law enforcement officer investigating Porters
case.  Attempting to negotiate a deal on his own charges, Niles
talked to Yarborough and informed him of Porters statement.  Yarborough
told Niles that he needed more information.  Yarborough also
indicated he would notify the federal authorities of Niles
assistance if Niles could obtain more information.
Subsequently, Niles and Porter were
moved to the C pod area of the detention center.  Detainees in the
C pod were given more liberties than those housed in max seg, including
expanded outside recreation time. 
The second statement was allegedly
made as Niles and Porter were outside talking and cleaning the recreation
area.  Niles attempted to elicit a more thorough confession from Porter by
telling him, if you really did it just confess your sin and Gods the only
one [c]an forgive you.  Porter then broke down, and Niles
recounted that Porter told him the following:

 It was at night.  He said
 when he got over there they was talking and he was kind ofthe conversation
 started like, he was asking her, Why you put me back on child support when
 I give you money every chance I get?  And that conversation led from
 one thing to another.  Then before he know it they was arguing and
 fighting.  And he say he was choking her and then he was choking her and
 he turned her loose she collapsed to the floor.  He was telling her, Get
 up.  Get up.  She wouldnt move so he panicked.  He said
 his first thought was to take her to the hospital and hes searching for the
 keys and he found the keys on some table in there.  Then he took her to
 the car and hes driving.  He say he couldnt take her to the
 hospital because he realized she was dead so he went into Darlington or to go
 into Darlington - - Ive never been to Darlington so I dont really
 know.  And its this bridge.  He took her down there, throw her
 under the bridge.  He came back to the crib or to the house.

Niles contacted Yarborough and
informed him of Porters second statement.  Yarborough agreed to notify
the federal authorities of Niles cooperation. 
A jury convicted Porter of the
lesser-included offense of voluntary manslaughter, and the trial court sentenced
him to 25 years imprisonment. 
STANDARD OF REVIEW
In criminal cases, the appellate
court sits to review errors of law only.  State v. Wilson, 345
S.C. 1, 5, 545 S.E.2d 827, 829 (2001).  We are bound by the trial
courts factual findings unless they are clearly erroneous.  State v.
Quattlebaum, 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000). 
This same standard of review applies to preliminary factual findings in
determining the admissibility of evidence.  Wilson, 345 S.C. at
6, 545 S.E.2d at 829.  On review, we are limited to determining whether the
trial judge abused his discretion.  See State v. Rochester,
301 S.C. 196, 200, 391 S.E.2d 244, 247 (1990). 
LAW/ANALYSIS
Porter argues the trial court erred
in admitting Niles testimony regarding the statements and Yarboroughs
testimony about his meetings with Niles.  Porter contends Niles was acting
as a government agent at the time he elicited incriminating statements from
Porter, violating Porters right to counsel.  We disagree.
Although we question whether Porter
adequately preserved this issue for appeal, Porters conviction is otherwise
affirmable.  See State v. Hoffman, 312 S.C. 386, 393,
440 S.E.2d 869, 873 (1994) (stating a contemporaneous objection is necessary to
preserve an issue for appellate review). 
The Sixth Amendment right to counsel
applies to communications between an accused and agents of the government
deliberately eliciting incriminating statements.  U.S. Const. amend. VI; Massiah
v. United States, 377 U.S. 201, 206 (1964).  In United States v.
Henry, the court found three factors relevant in determining whether a
fellow inmate was an agent of the government, deliberately eliciting
incriminating statements:  1) whether the informant was acting as an
informant for the government; 2) whether the informant was ostensibly no more
than a fellow inmate; and 3) whether the accused was in custody at the
time.  447 U.S. 264, 270 (1980).
In Henry, the government paid
an accuseds fellow inmate to obtain incriminating statements about a
crime.  Id. at 266.  The inmate was allegedly told to be alert
to any statements made by Henry but not to initiate conversation or question
Henry regarding the crime.  Id. at 268.  The court in Henry
nonetheless held that intentionally creating a situation likely to induce an
accused to make incriminating statements without the assistance of counsel was
sufficient to constitute a violation of the accuseds right to counsel.  Id.
at 274. 
In this case, we need not determine
whether Porters right to counsel was violated regarding admission of the
second statement because we find the admission of the first statement, which was
made prior to any contact between Niles and Yarborough, did not violate Porters
right to counsel, and admission of the second statement was cumulative to the
first statement.  At the time Porter made his first statement, Niles was
not acting as a government agent.  The information Niles related to
Yarborough regarding Porters first statement was not gleaned in contravention
of Porters right to counsel.  Niles merely heard Porters statements
and opportunistically reported them to the officer investigating Porters
case. 
Assuming, without so finding, that
Niles was acting as a government agent and deliberately elicited the second
statement from Porter, we find no error in its admission.  The admission of
improper evidence is harmless where it is cumulative to other evidence.  State
v. Braxton, 343 S.C. 629, 635, 541 S.E.2d 833, 836 (2001).  Evidence
concerning Porters second statement was merely cumulative to Niles
testimony regarding the first statement.  Therefore, the decision of the
trial court is
AFFIRMED. 
ANDERSON, STILWELL, and WILLIAMS,
JJ., concur.

[1]        We decide this case
without oral argument pursuant to Rule 215, SCACR.