667 S.E.2d 728

The STATE, Respondent,

v.

William H. GAINES, Jr., Appellant.

No. 26549.

Supreme Court of South Carolina.

Heard March 18, 2008.

Decided Oct. 6, 2008.

24

Robert T. Williams, Sr., and Benjamin A. Stitely, of Williams, Hendrix, Steigner & Brink, of Lexington, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Deborah R.J. Shupe, of Columbia, for Respondent.

Justice WALLER:

Appellant, William H. Gaines, was convicted of three counts of criminal solicitation of a minor, in violation of a recently enacted statute, S.C.Code Ann. § 16–15–342 (Supp.2006). He appeals contending, a) evidence of prior chat room conversations was improperly admitted; b) he was entitled to an entrapment instruction; and c) he was entitled to a directed verdict. We disagree and affirm the convictions.

## FACTS

Gaines, using the computer alias of HMMRTHEGRT8, engaged in internet communications on AOL chat rooms with a person he believed to be a twelve year old girl in Philadelphia, PA. The girl used the screen name "LilAshleyPA." The online chats occurred in an America Online (AOL) chat room between February and June 2004 during which time Gaines encouraged LilAshleyPA to travel to Greenville, South Car-

olina to see him. Gaines repeatedly made detailed sexual references as to how he wanted to spend time with LilAshleyPA when she arrived in South Carolina and proposed to rent a hotel room where she could stay with him. He also offered to buy LilAshleyPA clothing and lingerie and requested that she send him nude photos of herself. He emphasized that LilAshleyPA needed to keep their plans a secret because "guys my age aren't allowed to date girls your age."

Unbeknownst to Gaines, LilAshleyPA was actually Lisa Carroll, an undercover detective with the Pennsylvania Internet Crimes Against Children Task Force. Detective Carroll obtained a court order to obtain information on Gaines' identification and upon discovering Gaines lived in South Carolina, Detective Carroll referred the matter to South Carolina authorities.

Thereafter, South Carolina Law Enforcement Division (SLED) agents set up an AOL internet account using the screen name "Allyinsc13." In October 2004, Allyinsc13 contacted HMMRTHEGRT8 online by saying "hey." Gaines responded and the two began to chat. After discovering that Allyinsc13 was a thirteen-year-old living in Columbia and disclosing that he was twenty-eight years old, Gaines inquired into the possibility of their meeting up for the purpose of engaging in various forms of sexual intercourse. Allyinsc13 indicated that she was interested in HMMRTHEGRT8's visiting her in Columbia, and in their subsequent chats, Gaines proposed renting a hotel room and theorized the details of their first sexual encounter. He also offered to buy Allyinsc13 jeans and lingerie and requested she send him a photo. Gaines reminded Allyinsc13 that she needed to keep their relationship a secret because "guys my age aren't supposed to date girls under 18."

Based on Gaines' chats with Allyinsc13, which continued until the end of January 2005, SLED agents procured an order to obtain HMMRTHEGRT8's records from AOL. SLED agents confirmed that the online chats originated from the home that Gaines shared with his parents in Traveler's Rest and obtained a search warrant under which they confiscated Gaines' computer. Gaines subsequently provided oral and written statements admitting that he used the screen name

HMMRTHEGRT8 and that he communicated with girls on the Internet using that name, but claimed he was "just talking" with them.

Gaines was indicted on three counts of criminal solicitation of a minor in violation of S.C.Code Ann. § 16–15–342 for online chats with Allyinsc13 on October 25, 2004, November 30, 2004, and January 27, 2005. A jury convicted Gaines on all three counts. He was sentenced to concurrent ten-year terms, suspended to four years incarceration with five years probation on each count. This appeal followed.

## ISSUES

1. Did the trial court properly admit Gaines' chat room conversations with LilAshleyPA?

2. Did the trial court err in refusing a jury charge on the law of entrapment?

3. Did the trial court err in denying Gaines' motion for a directed verdict?

## 1. CHATS WITH LILASHLEY PA

■ Gaines contends the internet chats he had with LilAshleyPA between February and July 2004 were improperly admitted at trial. We disagree.[1] We find the chats were properly admitted.

■ Initially, Gaines contends that since S.C.Code Ann. § 16–15–342 (Supp.2006) did not become effective until April 26, 2004,[2] and most of his chats with LilAshleyPA occurred prior to that date, the earlier chats should not have been admitted inasmuch as they were not criminal behavior. We disagree. The fact that the offense of criminal solicitation of a

---

1. Gaines' First Amendment objection was not ruled upon by the trial court, such that we need not address it. We note, however, that the First Amendment does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. *See United States v. Curtin*, 489 F.3d 935 (9th Cir.2007). Gaines' reliance on *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 124 S.Ct. 2783, 159 L.Ed.2d 690 (2004) is misplaced; *Ashcroft* involved an overbreadth challenge to the Child Online Protection Act.

2. Section 16–15–342 was added by 2004 Act No. 208, § 4, effective April 26, 2004.

minor did not become a crime in South Carolina until April 24, 2004 is not dispositive. The chats with LilAshleyPA were at all times illegal under Pennsylvania law. *See* 18 Pa.C.S.A. § 6318 (unlawful contact with a minor if intentional contact with minor for purposes of engaging in sexual activity). Further, Gaines was not **indicted** for the chats with LilAshleyPA. Accordingly, we find no merit to this contention.

Further, although many of the chats Gaines had with LilAshleyPA occurred prior to April 24, 2004, there were also chats in June 2004, in which he reiterated both his desire to make love to LilAshleyPA before she turned 13, and his desire to fly her to SC to be with her. Accordingly, the earlier chats were cumulative. *State v. Johnson*, 334 S.C. 78, 512 S.E.2d 795 (1999) (to qualify for reversal on ground of cumulative effect of trial errors, defendant must demonstrate errors adversely affected right to fair trial); *State v. Wyatt*, 317 S.C. 370, 453 S.E.2d 890 (1995) (error in admission of evidence is harmless where it is cumulative to other evidence which was properly admitted).

In any event, evidence of the chats with LilAshleyPA were properly admitted by the trial court pursuant to Rule 404(b), SCACR, because they were relevant to demonstrate a common scheme or plan, intent, and/or the absence of mistake.

Evidence of other crimes, wrongs, or acts is generally not admissible to prove the defendant's guilt for the crime charged. Such evidence is, however, admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent. Rule 404(b), SCRE; *State v. Pagan*, 369 S.C. 201, 631 S.E.2d 262 (2006); *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). To be admissible, the bad act must logically relate to the crime with which the defendant has been charged. If the defendant was not convicted of the prior crime, evidence of the prior bad act must be clear and convincing. *Id.*; *State v. Beck*, 342 S.C. 129, 135–36, 536 S.E.2d 679, 682–83 (2000). Even if prior bad act evidence is clear and convincing and falls within an exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Rules 403, 404(b), SCRE; *State v. Gillian*, 373 S.C. 601, 646 S.E.2d

872 (2007); *State v. Braxton,* 343 S.C. 629, 541 S.E.2d 833 (2001).

Where there is a close degree of similarity between the crime charged and the prior bad act, both this Court and the Court of Appeals have held prior bad acts are admissible to demonstrate a common scheme or plan. *See State v. Hallman,* 298 S.C. 172, 175, 379 S.E.2d 115, 117 (1989) (evidence of prior bad acts bears such close similarity to the offense charged in this case that its probative value clearly outweighs its prejudicial effect); *State v. McClellan,* 283 S.C. 389, 392, 323 S.E.2d 772, 774 (1984) (such evidence is inadmissible unless the close similarity of the charged offense and the previous act enhances the probative value of the evidence so as to overrule the prejudicial effect); *State v. Patrick,* 318 S.C. 352, 356 457 S.E.2d 632, 635 (Ct.App.1995) (sufficient similarities between the Georgia case and present case to apply the *Lyle* common scheme or plan exception); *State v. Blanton,* 316 S.C. 31, 32, 446 S.E.2d 438, 439 (Ct.App.1994) (prior acts were sufficiently similar to the charged offense to be admissible); *State v. Wingo,* 304 S.C. 173, 176, 403 S.E.2d 322, 324 (Ct.App. 1991) (prior bad acts tended to show common plan or scheme when the experiences of each victim paralleled that of the other victims).

Under the facts presented here, it is clear the prior chats with LilAshleyPA were properly admitted. In both cases, HMMRTHEGRT8 engaged in AOL chat room conversations with young females whom he believed to be twelve and thirteen years old. He told both girls he was twenty-seven or twenty-eight years old and explained that it was illegal for him to date them. He proposed to both the idea of taking them to a motel room and also expressed his desire for each to come and live with him. He sought confirmation from both girls that they had not been intimate with anyone before, requested that each send him photos of themselves, offered to buy them clothing and lingerie, and suggested similar sexual acts for the girls to perform. Accordingly, we find the chats with LilAshleyPA were properly admitted.

## 2. ENTRAPMENT

Gaines next asserts he was entitled to a jury instruction on the defense of entrapment. We disagree.

■ The law to be charged to the jury is determined by the evidence presented at trial. *State v. Pittman*, 373 S.C. 527, 647 S.E.2d 144 (2007) *cert. denied* — U.S. ——, 128 S.Ct. 1872, 170 L.Ed.2d 751, 2008 WL 1699517 (2008); *State v. Knoten*, 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001). To warrant reversal, a trial court's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant. *State v. Burkhart*, 350 S.C. 252, 565 S.E.2d 298 (2002).

■ "The affirmative defense of entrapment is available where there is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for trickery, persuasion, or fraud of the officer." *State v. Brown*, 362 S.C. 258, 607 S.E.2d 93 (Ct.App.2004) (citation omitted). The defense of entrapment is not available to a defendant who is predisposed to commit a crime independent of governmental inducement and influence. Thus, the entrapment defense consists of two elements: (1) government inducement, and (2) lack of predisposition. *Id.* The fact that a government official merely affords opportunities or facilities for the commission of the offense does not constitute entrapment. *State v. Johnson*, 295 S.C. 215, 367 S.E.2d 700 (1988), *citing Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

The mere fact that Gaines' initial contact with Allyinsc13 was instigated by a SLED agent contacting him and stating, "hey" does not entitle him to an entrapment instruction. The initial contact merely afforded Gaines the opportunity to solicit sex. Gaines was in no way induced to commit the crime of criminal solicitation of a minor. *Accord State v. Cooper*, 302 S.C. 184, 186, 394 S.E.2d 717, 718 (Ct.App.1990) (defendant was not entitled to a jury instruction on entrapment where she engaged in the illegal activity because of her own preexisting readiness to do so and not because of incessant demands made upon her by an undercover agent). Gaines' request to charge was properly denied.

### 3. DIRECTED VERDICT

Gaines lastly asserts he was entitled to a directed verdict as there was no evidence of any "overt act" on his part in an

attempt to actually engage in the sexual acts. We disagree; we find no such act required by S.C.Code Ann. § 16–15–342.

When ruling on a motion for a directed verdict, the trial judge is concerned with the existence or nonexistence of evidence, not its weight. *State v. Weston*, 367 S.C. 279, 625 S.E.2d 641 (2006); *State v. Cherry*, 361 S.C. 588, 606 S.E.2d 475 (2004). When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. A defendant is entitled to a directed verdict when the state fails to produce evidence of the offense charged. When reviewing a denial of a directed verdict, the Court views the evidence and all reasonable inferences in the light most favorable to the state. If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury. *Id.*

S.C.Code Ann. § 16–15–342(A) provides:

(A) A person eighteen years of age or older commits the offense of criminal solicitation of a minor if he **knowingly contacts or communicates with, or attempts to contact or communicate with, a person who is under the age of eighteen,** or a person reasonably believed to be under the age of eighteen, **for the purpose of or with the intent of persuading, inducing, enticing, or coercing the person to engage or participate in a sexual activity** as defined in Section 16–15–375(5) or a violent crime as defined in Section 16–1–60, or with the intent to perform a sexual activity in the presence of the person under the age of eighteen, or person reasonably believed to be under the age of eighteen. (emphasis supplied).

Gaines contends this Court should construe the statute to require some "overt act" in furtherance of the criminal solicitation, such as travel to a destination, arrival with condoms, booking of hotel rooms, etc. The plain language of the statute imposes no such requirements.

In interpreting statutes, we look to the plain meaning of the statute and the intent of the Legislature. *State v. Dingle*, 376 S.C. 643, 659 S.E.2d 101(2008). All rules of statutory construction are subservient to the maxim that legislative intent must prevail if it can be reasonably discover-

ed in the language used. *State v. Pittman*, 373 S.C. 527, 647 S.E.2d 144 (2007). A statute's language must be construed in light of the intended purpose of the statute. Whenever possible, legislative intent should be found in the plain language of the statute itself. Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning. *Id.*

S.C.Code Ann. § 16–15–342(A) requires that a person over the age of eighteen knowingly communicate with a person believed to be under the age of eighteen for the purpose of or with the intent of persuading, inducing, enticing, or coercing the person to engage or participate in a sexual activity. It is patent that Gaines communicated with Allyinsc13 with the intent of enticing her to participate in sexual activity. Nothing more is required by the statute.

Gaines bases his "overt act" contention on cases from other jurisdictions. The cases cited by Gaines are simply inapposite and involve statutes which are dissimilar to the South Carolina statute. We find S.C.Code Ann. § 16–15–342 requires no overt act in furtherance of the criminal solicitation such that the trial court properly denied Gaines' motion for a directed verdict.

Gaines' convictions are affirmed.

**AFFIRMED.**

TOAL, C.J., BEATTY, J., and Acting Justice E.C. BURNETT, III, concur. PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES, concurring:

I agree that the evidence of appellant's communications with LilAshleyPA were admissible under Rule 404(b), SCRE. Having concluded the Pennsylvania evidence was admissible under 404(b), the next issue is whether the prejudicial impact of this evidence outweighs its probative value. Rule 403, SCRE. While this is a close question, appellant cannot demonstrate reversible error. Even if the LilAshleyPA evidence were not admissible in the State's case-in-chief, once appellant interposed the defense of entrapment his earlier efforts to

entice a young girl to come to South Carolina would have been admissible to prove appellant's prior disposition to commit the offense. Accordingly, I concur in the majority's decision to affirm appellant's convictions.