673 S.E.2d 885

**STATE of South Carolina, Respondent,**

v.

**Berry Scott BOLIN, Appellant.**

**No. 4497.**

Court of Appeals of South Carolina.

Heard Jan. 21, 2009.

Decided Feb. 5, 2009.

---

Leland B. Greeley, of Rock Hill, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, all of Columbia; and Solicitor Kevin S. Brackett, of York, for Respondent.

PIEPER, J.

In this criminal matter, Berry Scott Bolin (Bolin) asserts the trial court erred in (1) denying a requested jury charge on certain provisions of the "Castle Doctrine" contained in Section 16–11–440 of the South Carolina Code, and (2) denying his motion for a directed verdict. We affirm.

## FACTS/PROCEDURAL HISTORY

On the night of February 18, 2006, Bolin and several other individuals were guests in the home of Bradley Deal (Deal). Travis Falls (Falls), Holly McCarter (McCarter), Bobby Hovis (Hovis), and two others decided to drive to Deal's home to attack Deal, his brother, and various other people at the home.

Falls, having been released on bond only a few days earlier for charges of assault and battery on Deal, was under a bond provision forbidding any contact with Deal or his home. Despite the bond provision, Falls and the others drove to Deal's home, pulling up on the roadside just past the front of the driveway. Upon Falls' arrival, people began to rush outside of Deal's home, including Bolin. Falls and the others exited the car and proceeded up the driveway. One of the men yelled to start a fight and threw a beer bottle onto the driveway, shattering the bottle. As this was occurring, a fight ensued near the car between McCarter and Lori Moss (Moss), who was also a guest at Deal's home. Falls joined the fight and hit Moss, knocking her to the ground.

As Bolin exited the home, he heard someone yell to get a gun. Bolin went to his truck parked in the yard in front of Deal's home and retrieved a pistol stored in the glove compartment of the truck. Bolin heard gunfire near the car and to his side. Falls and several others ran to their car and got inside. As they entered the vehicle, Bolin heard more shots being fired near the car.[1] McCarter got in the driver's seat with Falls directly behind her while Hovis sat in the rear passenger seat next to Falls.

---

1. At oral argument, Bolin's counsel aknowledged that the record contained no evidence Bolin saw gunfire or gun smoke coming from the car; the record only suggests Bolin heard gunfire.

As the car began to pull away, Bolin and another individual who was standing beside Bolin fired several shots at the vehicle. A bullet of the same caliber as Bolin's pistol shattered the rear window, passed through Falls' wrist and hit Hovis in the head. The car proceeded away from the scene and headed to the Clover Police Department. An ambulance was dispatched and Falls and Hovis were taken to the hospital. Hovis was pronounced dead at the hospital; Falls received treatment and was released.

On May 18, 2006, Bolin was indicted by the York County Grand Jury on charges of murder, assault and battery with intent to kill, discharging a weapon into an occupied vehicle, unlawful possession of a pistol, and possession of a weapon during the commission of a violent offense. The case was tried before a jury on August 28, 2006. Prior to trial, the court quashed the indictment of unlawful possession of a pistol and the case proceeded on the remaining indictments.

At the close of the State's case, Bolin moved for a directed verdict on all indictments asserting Section 16–11–440(C) of the South Carolina Code. The motion was denied and the case proceeded. Following closing arguments, the court instructed the jury on the law of the case. Although requested by Bolin, the court refused to charge the jury on the presumptions contained in § 16–11–440(A) and (E). The jury returned a verdict finding Bolin guilty of voluntary manslaughter, assault and battery of a high and aggravated nature, and discharging a weapon into an occupied vehicle. Bolin received concurrent sentences of thirty years. This appeal followed.

## LAW/ANALYSIS

Bolin asserts the circuit court erred in refusing to instruct the jury on the legal presumptions contained in Section 16–11–440 of the South Carolina Code (Supp.2008), also referred to as the Protection of Persons and Property Act (the Act). Specifically, Bolin asserts that the Act, which codified the common law Castle Doctrine and substantively expanded the law of self defense in this State, should have been applied in the instant case.[2] We disagree.

2. Bolin requested the jury to be charged on § 16–11–440(A) and (E) based on the assumption that pursuant to § 16–11–440(E), the aggres-

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *State v. Pittman,* 373 S.C. 527, 561, 647 S.E.2d 144, 161 (2007). Thus, in interpreting statutes, we look to the plain meaning of the statute and the intent of the legislature. *State v. Gaines,* 380 S.C. 23, 32, 667 S.E.2d 728, 733 (2008). A statute's language must be construed in light of the intended purpose of the statute. *Id.* at 33, 667 S.E.2d at 733. Whenever possible, legislative intent should be found in the plain language of the statute itself. *Id.* "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Pittman,* 373 S.C. at 561, 647 S.E.2d at 161(citing *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)).

Where the legislative intent is not clear, we adhere to the presumption that statutory enactments are to be given prospective rather than retroactive application. *See State v. Varner,* 310 S.C. 264, 266, 423 S.E.2d 133, 134 (1992). The exception to the presumption of prospective operation arises when the statute is remedial or procedural in nature. *State v. Davis,* 309 S.C. 326, 334, 422 S.E.2d 133, 139 (1992), overruled on other grounds by *Brightman v. State,* 336 S.C. 348, 352 n. 2, 520 S.E.2d 614, 616 n. 2 (1999). However, as indicated, legislative intent is paramount in determining whether a statute will have prospective or retroactive application. *Jenkins v. Meares,* 302 S.C. 142, 146, 394 S.E.2d 317, 319 (1990).

Turning to the case at bar, the Act went into effect on June 9, 2006, four months after the events leading to the instant matter. Thus, in order for the Act to apply, the legislature must have either intended the Act to be retroactive or, in the absence of such legislative intent, the Act must fall under the exception to the presumption of prospective application by being remedial or procedural. Here, as indicated in this court's recent holding in *State v. Dickey,* 380 S.C. 384, 669 S.E.2d 917 (Ct.App.2008), there is no evidence of legislative

sor intended to commit an unlawful act and that pursuant to § 16–11–440(A), Bolin was, therefore, acting within reasonable fear of imminent peril of death or great bodily injury to himself or another. *See* S.C.Code Ann. § 16–11–440(A), (E) (Supp.2008).

intent that the Act be applied retroactively. *Id.* at 405, 669 S.E.2d at 928. In fact, the plain language of the Act specifically indicates the legislature's intent that the Act be applied prospectively. *Id.* Section 4 of the Act expressly provides:

> The repeal or amendment by this act of any law, whether temporary or permanent or civil or criminal, does not affect pending actions, rights, duties, or liabilities founded thereon, or alter, discharge, release or extinguish any penalty, forfeiture, or liability incurred under the repealed or amended law, unless the repealed or amended provision shall so expressly provide. After the effective date of this act, all laws repealed or amended by this act must be taken and treated as remaining in full force and effect for the purpose of sustaining any pending or vested right, civil action, special proceeding, criminal prosecution, or appeal existing as of the effective date of this act, and for the enforcement of rights, duties, penalties, forfeitures, and liabilities as they stood under the repealed or amended laws.

2006 S.C. Act No. 379 § 4. By stating that the Act is to have no effect on pending actions, criminal prosecutions, rights, duties, or liabilities, and that all laws repealed or amended by the Act must be treated as remaining in full force and effect, the clear language of the Act indicates that it is prospective. *Dickey,* 380 S.C. at 405, 669 S.E.2d at 928. Thus, because the legislature clearly and unambiguously specified the Act be applied prospectively, the Act cannot be applied retroactively to Bolin's case.[3] *See id.* (holding retroactive application of the Act to prosecution that was pending before the effective date of the Act was precluded because the Act is prospective). Therefore, the trial court committed no error in refusing the requested charge.

Because we find the Act does not retroactively apply to Bolin's case, we need not address Bolin's remaining argument concerning the court's refusal to direct a verdict based upon § 16–11–450 of the Act. Additionally, counsel withdrew this

---

**3.** Given that the legislature clearly specified the Act to apply prospectively, we need not determine whether the Act is remedial or procedural in nature. Notwithstanding, *Dickey* resolved this issue by holding the Act is neither remedial nor procedural. *Dickey,* 380 S.C. at 405, 669 S.E.2d at 928.

ground of appeal at oral argument and proceeded only with the jury charge issue.

## CONCLUSION

Accordingly, for the foregoing reasons, the order of the circuit court is **AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.